**In re Patricia Wells MADISON, Debtor.**

**Bankruptcy No. 93–13384DAS.**

United States Bankruptcy Court,
E.D. Pennsylvania.

July 27, 1995.

Autherine B. Smith, Philadelphia, PA, for debtor.

Harry Aaron Rubin, Philadelphia, PA, for movant.

Edward Sparkman, Chapter 13 trustee, Philadelphia, PA.

*OPINION*

DAVID A. SCHOLL, Chief Judge.

*A. INTRODUCTION*

Society Hill Savings and Loan Association ("the Movant") seeks to reopen the instant, fifth bankruptcy case filed by PATRICIA WELLS MADISON ("the Debtor") for the purpose of revising the dismissal order in this case to invalidate a new sixth filing. The sole basis of the Motion is an agreement ("the Agreement") restricting further refilings made by the Debtor's former counsel in the course of her fourth bankruptcy case. Though finding that the Motion before us is not rendered moot by the Debtor's subsequent sixth bankruptcy filing, we reject the Movant's argument that the Agreement is strictly enforceable under its own totally-preclusive terms because an agreement not to file a future bankruptcy case under any conditions violates public policy, and is therefore unenforceable. Considering the history of the Debtor's series of filings, an exercise which we find is always necessary and appropriate before validly precluding a debtor from future filings, we impose certain limited restrictions on the Debtor in her sixth case, *i.e.*, if it is dismissed prior to confirmation, we will bar any refiling for 180 days unless express permission to refile is granted. We therefore will reopen this case only for the purpose of entering such an Order.

*B. PROCEDURAL AND FACTUAL HISTORY*

The Movant holds a mortgage on the Debtor's home located at 8531 Michener Avenue, Philadelphia, Pennsylvania 19150. On February 2, 1991, the Movant obtained a judgment in mortgage foreclosure against the Debtor in state court. On August 28, 1991, the Debtor filed her first voluntary petition for relief under Chapter 13 of the Bankruptcy Code at Bankr. No. 91–14307S *pro se*. However, this case was promptly dismissed on September 16, 1991, when the Debtor failed to file all of the required documents.

During the next two years, the Debtor successively filed three other petitions, all of which were summarily dismissed. On November 27, 1991, the Debtor filed her second

*pro se* Chapter 13 bankruptcy case, at Bankr. No. 91–16363S. On February 11, 1992, this case was dismissed because the Debtor failed to pay a filing fee installment. On June 1, 1992, the Debtor, now represented by Wendell K. Grimes, Esquire ("Grimes"), filed her third bankruptcy petition, at Bankr. No. 92–13350S. On July 14, 1992, the third case was also dismissed because the Debtor's failure to pay the filing fee. Nevertheless, thereafter, on November 2, 1992, the Debtor filed her fourth Chapter 13 case at Bankr. No. 91–16730S, per Grimes as her counsel. On May 4, 1993, this case too, was dismissed on the Trustee's motion asserting that the Debtor failed to file a plan which was feasible.

After dismissal of the fourth bankruptcy, the Movant filed a motion seeking to amend the dismissal order in that case to preclude the Debtor's filing of any new bankruptcy case for 180 days thereafter. The matter was resolved by an oral agreement between Grimes and counsel for the Movant, placed on record during a colloquy on June 3, 1993. The agreement provided that the Movant would withdraw its motion to preclude a new filing if the Debtor agreed that she would be precluded from refiling a prospective sixth case for at least 180 days after any dismissal of an anticipated fifth bankruptcy case. The transcript of that colloquy indicates that Grimes described the Agreement as follows:

> Your Honor, essentially, we've agreed that the motion will be withdrawn with the following conditions.... This will be the debtor's last chance to refile a Chapter 13 bankruptcy with regards [sic] to this creditor. She has agreed that she will fulfill her obligations to the trustee as well as to Society Hill Savings & Loan in the new bankruptcy.... If she fails to do that and the case is dismissed, it will be dismissed with prejudice with no refilings for 180 days.

Grimes, but not the Debtor, subsequently signed a written stipulation which was filed in the fourth case on August 27, 1993. This written Agreement provided that the Movant would withdraw its motion to preclude filing on the condition that the Debtor agreed that, if her fifth bankruptcy were dismissed, it would be dismissed with prejudice. Howev-

er, the Stipulation contained no request for court approval and was therefore never presented to the court for approval. When no party appeared at a hearing to show cause why the motion should not be dismissed for failure to comply with Local Bankruptcy Rule 7041.2 (providing that a contested matter may be dismissed if a reported settlement is not presented to the court for approval within 30 days), it was simply noted that no court approval of the Stipulation had been requested, and the case was subsequently closed.

On June 4, 1993, the Debtor filed her anticipated above-captioned fifth bankruptcy case. However, prior to her fifth filing, the Debtor retained Autherine B. Smith, Esquire ("Smith"), as a successor to Grimes. The Debtor's fifth bankruptcy enjoyed unparalleled success. A motion of the Movant to dismiss it with prejudice was denied on December 16, 1993. A plan was confirmed on January 19, 1994. An amended plan was filed on July 7, 1994. A second motion of the Movant for relief from the automatic stay was filed on August 2, 1994; reported settled on October 4, 1994; relisted on December 6, 1994; and once again reported settled on January 12, 1995.

However, on January 13, 1995, the Trustee filed a motion to dismiss the case because of a payment delinquency. On March 23, 1995, the Debtor's fifth case was, like its predecessors, dismissed on this motion.

Upon learning of this dismissal Order, the Movant then sought, in the Motion before us, to amend the dismissal Order to preclude the Debtor from again re-filing for bankruptcy relief for a period of 180 days after the dismissal, pursuant to the terms of the Agreement. A hearing on the Motion was held on June 15, 1995. However, on the morning of the hearing, the Debtor, per Smith as counsel, filed her sixth bankruptcy case. In a colloquy before the court, the parties agreed to submit the Motion on allegations contained therein which were admitted by the Debtor, the written Agreement, and the oral record made at the June 3, 1993, hearing. Counsel were granted permission to file Briefs supporting their respective positions on the Motion by June 30, 1995.

The Debtor argues that, in light of her most recent bankruptcy filing, the Motion is moot. Additionally, the Debtor contends that the pre-petition agreement is unenforceable because it violates public policy. Finally, the Debtor contends that, even if the Agreement were potentially enforceable, it is not in fact binding because it was filed in neither the Debtor's fifth nor sixth cases. The Movant, although conceding that the Debtor's accomplishments in the fifth case were far superior to her prior efforts, argues simply that it "is relying on the [A]greement and Stipulation and does not have to show misconduct at this point because of the parties [sic] agreement."

## C. DISCUSSION

1. *THE INSTANT MOTION IS NOT RENDERED MOOT BY THE DEBTOR'S FILING OF A SUBSEQUENT SIXTH BANKRUPTCY CASE, AND THIS CASE WILL THEREFORE BE REOPENED TO ADJUDICATE THE MOTION ON ITS MERITS.*

■ The Debtor apparently argues that, because she filed a subsequent, sixth bankruptcy case prior to the disposition of the instant Motion, arising out of her fifth case, the Motion is thereby rendered moot.

In *County of Los Angeles v. Davis,* 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979), the Court thusly articulated the principles of mootness which we find pertinent to the Debtor's instant mootness claim:

"Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack,* 395 U.S. 486, 496 [89 S.Ct. 1944, 1951, 23 L.Ed.2d 491] (1969). We recognize that, as a general rule, "voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, *i.e.,* does not make the case moot." *United States v. W.T. Grant Co.,* 345 U.S. 629, 632 [73 S.Ct. 894, 897, 97 L.Ed. 1303] (1953). But jurisdiction, properly acquired, may abate if the case becomes moot because

(1) it can be said with assurance that "there is no reasonable expectation ..." that the alleged violation will recur, *see id.,* at 633 [73 S.Ct. at 897]; *see also SEC v. Medical Committee For Human Rights,* 404 U.S. 403 [92 S.Ct. 577, 30 L.Ed.2d 560] (1972), and

(2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation. *See, e.g., DeFunis v. Odegaard,* 416 U.S. 312 [94 S.Ct. 1704, 40 L.Ed.2d 164] (1974); *Indiana Employment Security Div. v. Burney,* 409 U.S. 540 [93 S.Ct. 883, 35 L.Ed.2d 62] (1973).

When both conditions are satisfied it may be said that the case is moot because neither party has a legally cognizable interest in the final determination of the underlying questions of fact and law.

The burden of demonstrating mootness "is a heavy one." *See United States v. W.T. Grant Co., supra,* at 632–633 [73 S.Ct. at 897].

*Accord, e.g., In re Japanese Electronic Products Antitrust Litigation,* 723 F.2d 238, 318 (3d Cir.1983), *rev'd on other grounds sub nom. Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); and *Finberg v. Sullivan,* 658 F.2d 93, 97–98 (3d Cir.1980).

We can hardly say, with any degree of assurance, that the conduct of the Debtor attacked in the Motion arising out of the Debtor's fifth case, *i.e.,* refiling a bankruptcy case after she has agreed not to do so, is not likely to recur. In fact, it *has* recurred upon the Debtor's sixth bankruptcy filing. Furthermore, we reject the Debtor's implicit assertion that the sixth filing eradicates any power of this court to examine her conduct in the course of the fifth filing.

Were there any doubt on the latter point, *In re Narod,* 138 B.R. 478, 480 (E.D.Pa. 1992), appears to settle the issue. In that case, the movant sought to reopen the debtor's fifth bankruptcy case a considerable time after its dismissal, and after the intervention of a sixth bankruptcy case, to append a restriction on future filings to the dismissal order in the fifth case. *Id.* The *Narod* court held that our refusal to reopen the fifth case,

despite the considerable passage of time after the entry of the dismissal Order before the Movant sought relief, was in error. *Id.* at 481–82.

In the instant factual context, there has been no delay comparable to that in *Narod* between the dismissal of the fifth case and the filing of the Motion. Moreover, the Debtor's contention that she can thwart a challenge to her right to file a sixth bankruptcy case by filing such a sixth case on the day of the hearing on the Motion is, to put it mildly, equitably unappealing. We therefore hold that the Motion is in no sense moot, and that the Debtor's fifth case shall be reopened to consider the Motion on its merits.

2. *AN AGREEMENT WHEREBY A DEBTOR AGREES TO FOREGO BANKRUPTCY PROTECTION VIOLATES PUBLIC POLICY AND IS UNENFORCEABLE.*

■ As the Movant suggested in its willingness to proceed without any testimony, and as it makes clear in the arguments articulated in its Brief, it presents the substantive issue as purely a claim that its "contract" with the Debtor by which she agreed to file no further bankruptcies within 180 days from the filing of her fifth bankruptcy case is capable of strict enforcement and must be enforced by this court. Unfortunately, this argument, though seemingly resounding with thunderous force in light of the large number of cases filed by the Debtor within a brief period, strikes a lightning rod in the form of the legal principle that an agreement not to file bankruptcy is unenforceable because it violates public policy. *See Fallick v. Kehr,* 369 F.2d 899, 904 (2d Cir.1966) (an advance agreement to waive the benefits of bankruptcy is void). *Accord, In re Weitzen,* 3 F.Supp. 698 (S.D.N.Y.1933); *In re Peli,* 31 B.R. 952, 956 (Bankr.E.D.N.Y.1983); *In re Adana Mortgage Bankers, Inc.,* 12 B.R. 989, 1009 (Bankr.N.D.Ga.1981), *vacated by joint motion of parties,* 687 F.2d 344 (11th Cir.1982); and *In re Kriger,* 2 B.R. 19, 23 (Bankr.D.Or. 1979).

■ Enforcement of even an agreement which only temporarily waives such rights would appear sufficient to us to undermine the Congressionally-expressed public policy underpinning the Bankruptcy Code. While a creditor could potentially attempt to protect its interests through an agreement by having a potential debtor stipulate to facts which would entitle it to relief, stipulations regarding questions of law are not binding on a court or a debtor. *See Marden v. Int'l Assoc. of Machinists & Aerospace Workers,* 576 F.2d 576, 580 (5th Cir.1980); and *In re Dawson,* 162 B.R. 329, 333–34 (Bankr.D.Kan. 1993). The determination of eligibility for chapter 13 relief is at least a mixed question of fact and law, if not a pure question of law. Therefore, a stipulation by which a potential debtor would agree not to file a bankruptcy case for even a finite period of time, such as 180 days, is not binding. *See In re Scheinberg,* 132 B.R. 443, 444 (Bankr.D.Kan.1991), *aff'd,* 134 B.R. 426 (D.Kan.1992). Such a temporary bar could harm competing creditors, as it could provide one creditor with an unfair advantage, such as providing that creditor with sufficient time as to avoid the preference period provided for in 11 U.S.C. § 547.

Thus, even where a temporary bar is expressly provided for under the Code, courts have noted that the effect of depriving a debtor of access to the court is a harsh remedy which must be limited to 180 days. *See In re Frieouf,* 938 F.2d 1099, 1103–04 (10th Cir.1991). As a matter of policy, it has been pointed out that, if agreements prohibiting bankruptcies were given force, the Code could be nullified in the vast majority of debts arising out of contracts. *See Adana Mortgage Bankers, supra,* 12 B.R. at 1009, citing *Federal National Bank v. Koppel,* 253 Mass. 157, 159, 148 N.E. 379, 380 (1925).

■ The fact that the Movant agreed to forego its right to be heard on its motion raised in the Debtor's fourth case in consideration for the Debtor's promise that the fifth case would be her last filing is similarly of no consequence. Even bargained-for and knowing waivers of the right to seek protection in bankruptcy must be deemed void. *Id.* If we were to rule otherwise, the lending community would be able to determine the extent, if any, of access to the bankruptcy courts, rather than the statute itself. *Id.*

The "slippery slope" consequences of such a ruling would be enormous.

The notion that a pre-petition waiver of a bankruptcy benefit is unenforceable is not novel. *See Klingman v. Levinson*, 831 F.2d 1292, 1296 n. 3 (7th Cir.1987) (holding that debtors cannot waive their right to have a dischargeability question heard by a bankruptcy court); and *In re Ethridge*, 80 B.R. 581, 586 (Bankr.M.D.Ga.1987) (same). *See also Association of St. Croix Condominium Owners v. St. Croix Hotel Corp.*, 682 F.2d 446, 448 (3d Cir.1982) (stating in *dictum* that a debtor cannot waive stay protection); *In re Jenkins Court Associates L.P.*, 181 B.R. 33, 37 (Bankr.E.D.Pa.1995) (refusing to enforce a pre-petition waiver of the automatic stay); *In re Cheripka*, 122 B.R. 33, 37 (Bankr. W.D.Pa.1990), *aff'd*, 1991 WL 276289 (3d Cir. Dec. 31, 1991), *vacated*, No. 91–3249 (3d Cir. Jan. 22, 1992), *aff'd by equally divided court en banc*, No. 91–3249 (3d Cir. Feb. 24, 1992) (waiver of discharge held unenforceable); and *In re Sky Group Int'l, Inc.*, 108 B.R. 86, 89 (Bankr.W.D.Pa.1989) (pre-petition waiver of the automatic stay is unenforceable); and *In re Clark*, 69 B.R. 885, 889, *supplemented on other grounds*, 71 B.R. 747 (Bankr. E.D.Pa.1987) (a debtor cannot waive the stay). While some courts have enforced pre-petition agreements waiving the stay protection in bankruptcy in the hope of promoting out of court settlements, even those courts have acknowledged in dicta that a blanket waiver of bankruptcy protection would be unenforceable. *See In re Cheeks*, 167 B.R. 817, 818–19 (Bankr.D.S.C.1994); *In re Club Tower L.P.*, 138 B.R. 307, 311 (Bankr. N.D.Ga.1991); and *In re Citadel Properties, Inc.*, 86 B.R. 275 (Bankr.M.D.Fla.1988).

Moreover, several sections of the Code expressly provide that certain types of waivers of bankruptcy protections must be deemed unenforceable. *See* 11 U.S.C. § 365(b)(2) (invalidating defaults in executory contracts arising from *ipso facto* clauses); 11 U.S.C. § 522(e) (making of no effect waivers of exemptions and avoiding powers); 11 U.S.C. §§ 524(c), (d) (establishing an exclusive set of requirements, including a rescission period, when debtors may elect to waive their dischargeability rights by reaffirming debts); 11 U.S.C. § 541(c) (nullifying any effect of an *ipso facto* clause on the concept of "property of the estate"); and 11 U.S.C. § 1307(b) (making unenforceable waivers of the right to dismiss or convert a bankruptcy case to another Chapter).

If this court were to enforce a blanket prohibition on a bankruptcy filing—even a temporary prohibition—it would *a fortiori* give effect to a "super-waiver" encompassing the forfeiture of the rights to stay protection, dischargeability, and dismissal and conversion, as well as numerous other protections afforded to a debtor in bankruptcy. Since provisions in an agreement which merely hinder the chances of successful reorganization are deemed invalid, we find waivers of the right to file bankruptcy cases at all to be clearly unenforceable. *See In re Tobago Bay Trading Co.*, 112 B.R. 463, 466 (Bankr. N.D.Ga.1990), citing *In re Libson Shops, Inc.*, 24 B.R. 693, 695 (Bankr.E.D.Mo.1982).

It may be queried as to whether a bankruptcy court can restrict or limit bankruptcy filings, even though most of the foregoing cases involved non-bankruptcy courts and, perhaps more defensibly, precluded only non-bankruptcy courts from effecting waivers on subsequent bankruptcy filings. We do mean to express a belief that any attempt on the part of a non-bankruptcy court to restrict or limit a bankruptcy filing is void. However, we also believe that a bankruptcy court must retain some residual power to restrict bankruptcy filings. Otherwise, debtors such as the instant Debtor could simply refile again and again with impunity.

In *Johnson v. Home State Bank*, 501 U.S. 78, 87, 111 S.Ct. 2150, 2155–56, 115 L.Ed.2d 66 (1991), the Court made clear that it did not believe that Congress prohibited multiple bankruptcy filings *per se* in the following passage:

> Congress has expressly prohibited various forms of serial filings. *See, e.g.,* 11 U.S.C. § 109(g) (no filings within 180 days of dismissal); § 727(a)(8) (no Chapter 7 filing within six years of a Chapter 7 or Chapter 11 filing); § 727(a)(9) (limitation on Chapter 7 filing within six years of Chapter 12 or Chapter 13 filing). The absence of a like prohibition on serial filing of Chapter 7

and Chapter 13 petitions, combined with the evident care with which Congress fashioned these express prohibitions, convinces us that Congress did not intend categorically to foreclose the benefit of Chapter 13 reorganization to a debtor who previously has filed for Chapter 7 relief. *Cf. United States v. Smith*, 499 U.S. [160], [166], 111 S.Ct. 1180, [1185], 113 L.Ed.2d 134 (1991) (expressly enumerated exceptions presumed to be exclusive).

While we do not believe that broad "enforcement" of an uncodified "good faith filing" requirement is a solution to the prevention of totally abusive repetitive filings, *see In re Lilley*, 181 B.R. 809, 811 (Bankr. E.D.Pa.1995); and *In re Oglesby*, 161 B.R. 917, 923, 924 (Bankr.E.D.Pa.1993), *aff'd*, C.A. No. 94–0617 (E.D.Pa. April 7, 1994), we have, in *Oglesby, id.* at 924, posited the following means to curb abusive filings,

> As the Supreme Court suggests [in *Johnson*, 501 U.S. at 87, quoted *supra*], ... bankruptcy courts have many tools at their disposal to preclude abusive filings. One method is by invoking Federal Rule of Bankruptcy Procedure 9011. *See In re Narod*, 138 B.R. 478, 481–82 (E.D.Pa. 1992). Another is the utilization of orders which, like the provisions which this court required to be appended to the instant Plan [*see In re Oglesby*, 150 B.R. 620, 628 (Bankr.E.D.Pa.), *remanded*, 158 B.R. 602 (E.D.Pa.1993), *restated* in the decision reported at 161 B.R. 917] (debtor would be barred from refiling for 180 days if she defaulted in payments in the first 24 months after confirmation) ], precludes further filings if certain commitments of a debtor are not kept.

In light of this conclusion, a question may arise as to what is the distinction between the Agreement in issue and the Order at issue in *Oglesby*. The distinction is that the *Oglesby* Order was entered only after this court's plenary consideration of all of the facts and its making a considered ruling on the basis of those facts. A bankruptcy court's order barring future filings, on a certification of default of the terms of a "settlement," or on a very limited record, as often transpires, should have no such conclusivity.

If this result requires us to hear evidence in circumstances where the parties may have previously felt that the bottom-line order was the only matter of significance, so be it. Barring future bankruptcy filings should never be done lightly.

In the instant factual situation, there was no court review of its pertinent facts. In order to finally resolve this matter, we therefore conclude that we are obliged to engage in an analysis of the pertinent facts, and we will enter an Order which we believe is as viable as the *Oglesby* Order.

We also would observe that even an Order such as was entered in *Oglesby* cannot be read as unconditional, and therefore subject to no further revision, irrespective of what circumstances might develop. The *Oglesby* Order provided as much on its face, since it expressly provided that the debtor was precluded from refiling within 180 days "except by express permission of the court upon motion after notice of its filing to [the mortgagee]." 150 B.R. at 628. The *Oglesby* debtor was therefore accorded a narrow but express opportunity to convince us to modify preclusion from refiling even upon dismissal of her case within 24 months from confirmation. Although this court admittedly may unintentionally, through oversight, omit this or like language from similar orders, we must emphasize that we believe that such conditions on preclusive orders must always be deemed to be implicitly included unless these conditions are expressly excluded for articulated cause.

3. *THE APPROPRIATE REMEDY FOR THE MOVANT IS A RESTRICTIVE ORDER IN THE DEBTOR'S PRESENT CASE.*

 An analysis of the instant Debtor's series of bankruptcy filings indicates that some restrictive measures are appropriate. Also, we believe that it is equitable to render these restrictions in a manner in which they will be effective, *i.e.,* by entering them on the record in the Debtor's pending sixth bankruptcy case, as well as on the record in this case, in which the Motion was filed. We recognize that the Movant has not sought relief in the present case, but, in exercising

our equitable powers in light of the specific facts, we also find that the Movant's activities in the fourth and fifth cases indicate a reasonable degree of diligence which necessarily could not have included a motion in the Debtor's sixth bankruptcy case, which had not been filed with the date of the hearing on the Motion before us.

At this point, we are not inclined to accord too much weight to the Debtor's first three filings. The first two cases were filed *pro se.* The first was dismissed for the failure to properly file documents, which was likely attributable to the Debtor's lack of sophistication with the bankruptcy process. The second case and particularly the third case were quickly dispatched when the Debtor failed to pay the requisite filing fees. None of these filings necessarily evinced an intention to abuse the bankruptcy system, and the cases, short lives resulted in little more than a nuisance to the Movant.

In the course of the fourth case, the Movant became justifiably skeptical about the Debtor's prospects for reorganization, even though by now she had probably developed sufficient sophistication to handle the process. Had the fifth filing suffered the fate of the previous four, the Agreement may well have been worthy of enforcement on pretty much its own terms.

However, the fifth case resulted in a confirmed plan and had a lifespan of almost two years, even in light of the Movant's apparently careful monitoring of the Debtor's progress in that case. Being compelled to refile only after lack of success in a Chapter 13 case which featured a confirmed plan and resulted in payments to the mortgagee for almost two years is not abusive conduct. No restrictions of any kind on the sixth filing would be warranted were it not for the presence of the first four filings. The first three filings must be considered to have some, if limited, weight. Adding the fourth filing to the equation results in our conclusion that some restrictions on the Debtor's current filing are appropriate.

We do note that the legislative strictures of 11 U.S.C. § 109(g), which provides as follows, must be honored:

Notwithstanding any other provision in this section, no individual ... may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days if—

(1) the case was dismissed by the court for willful failure of the debtor to abide by orders of the court, or to appear before the court in proper prosecution of the action of the case; or

(2) the debtor requested relief and obtained voluntary dismissal of the case following the filing of a request for relief from the automatic stay provided by section 362 of this title.

However, in order to prevail under 11 U.S.C. § 109(g)(1), a moving party bears the burden of showing that the debtor acted deliberately. *In re Walker,* 171 B.R. 197, 203 (Bankr.E.D.Pa.1994); *In re Arena,* 81 B.R. 851, 853 (Bankr.E.D.Pa.1988); *In re Inesta Quinones,* 73 B.R. 333, 336 (Bankr. D.P.R.1987); and *In re Morris,* 49 B.R. 123, 124 (Bankr.W.D.Ky.1985). *But cf. In re Montgomery,* 37 F.3d 413, 415 (8th Cir.1994) (holding, to the contrary of our pertinent conclusions on the issue, that the debtor bears the burden of establishing the lack of willfulness of the action resulting in dismissal). Here, the Movant made no effort to aver in the Motion or argue in its Brief that the Debtor "willfully" failed to abide by a court order or to appear in proper prosecution of the case. Courts have understandably been reluctant to attribute willfulness to a mere failure of a debtor to make payments, thereby resulting in dismissal. *See In re Dodge,* 86 B.R. 535, 537 (Bankr.S.D.Ohio 1988); *Inesta Quinones, supra,* 73 B.R. at 336–37 (Bankr.D.P.R.1987); and *In re Glover,* 53 B.R. 14, 16 (Bankr.D.Or.1985).

Meanwhile, the focus of § 109(g)(2) is to prevent a debtor who is faced with a motion for relief from voluntarily dismissing a current case and immediately refiling a new one, thereby frustrating a creditor's attempts at ever having its rights adjudicated. None of the Debtor's prior five cases was a voluntary dismissal. Failures to make plan payments or file schedules are not tantamount to voluntary dismissals. *See Walker, supra,* 171 B.R. at 203 (not opposing

a dismissal motion filed by another interested party, even where the debtor failed to timely file the requisite schedules, does not constitute a voluntary dismissal). Because § 109(g) strictly prevents certain tactics on a debtor's part, irrespective of the debtor's actual "abusive" motive, *but cf. In re Duncan,* 182 B.R. 156, 158–60 (Bankr.W.D.Va.1995) (a "causal connection" between the § 362 motion and the dismissal is necessary to invoke § 109(g)), the facts of a debtor's case must fit squarely within the parameters of § 109(g) before it can be applied. *Id.* at 202.

Since there is no argument that these restrictive provisions apply, and it would be inequitable to enforce the Agreement on all of the facts indicated, the restrictions imposed must be modest yet meaningful. Basically, we will provide that, if the Debtor cannot achieve confirmation of a plan in the sixth case within a reasonable time, that case will be dismissed under restrictive conditions, *i.e.,* another case may not be refiled within 180 days from the dismissal order, except by express permission of this court in response to a motion seeking relief which provides both the Movant and the Standing Chapter 13 Trustee with an opportunity to be heard.

*D. CONCLUSION*

An Order consistent with this Opinion, re-opening the above-captioned case only to allow the entry of the is Order in the Debtor's new case, will be entered.

*ORDER*

AND NOW, this 27th day of July, 1995, on the Motion of Society Hill Savings and Loan Association by its Successor, Ginns Bond and Mortgage Company ["the Movant"], to Reopen the Case and Mark the Dismissal Order to Preclude New Action by Defendant Within 180 Days of Dismissal ("the Motion"), and upon consideration of the post-hearing Briefs of the parties, it is hereby ORDERED AND DECREED as follows:

1. The Motion is GRANTED in part only.

2. The instant case is REOPENED to reflect the entry of the following Order on the docket of this case and on the docket of Bankruptcy Case No. 95–14585DAS ("the 1995 Case").

3. Upon entry of this Order on this case's docket, this case shall be RECLOSED.

4. The Debtor shall achieve confirmation of a plan of reorganization in the 1995 Case on or before January 31, 1996, or that case will be dismissed under the terms set forth in paragraph 5 of this Order.

5. In light of the five prior unsuccessful filings of the Debtor and the circumstances of the filing of the 1995 Case, if a plan is not confirmed in the 1995 Case prior to January 31, 1996 (which shall be a basis for dismissal), or if the 1995 Case is dismissed at any time prior to confirmation for any other reason, the Debtor will be barred from filing another case for at least 180 days after dismissal of the 1995 Case, unless she first receives permission from this court to do so upon motion and after reasonable notice and opportunity to be heard to the Movant and the Standing Chapter 13 Trustee.

6. If no action is taken pursuant to paragraph 5 of this Order prior to confirmation, this Order shall be deemed to be of no effect.