**In the Matter of Merle W. and Jean A. PEASE, Debtors.**

**Bankruptcy No. BK95–41596.**

United States Bankruptcy Court, D. Nebraska.

March 22, 1996.

Clay M. Rogers, Omaha, NE, for debtors.

Steven J. Woolley and Janice Woolley, Omaha, NE, for United Nebraska Bank, f/k/a United Nebraska Bank, O'Neill, Nebraska.

Rodney W. Smith, Neligh, NE, for Unsecured Creditors' Committee.

### MEMORANDUM

JOHN C. MINAHAN, Jr., Bankruptcy Judge.

This case presents the question of whether a pre-bankruptcy waiver of the automatic

stay of 11 U.S.C. § 362 is enforceable. I decline to follow emerging decisional law and conclude that such waivers are not enforceable, per se.

## FACTS

This voluntary Chapter 11 case was filed on December 29, 1995. At the time the petition was filed, the debtors were indebted to United Nebraska Bank (the "Bank") in the amount of $1,810,822.22. The Bank's claim is fully secured by security interests in real and personal property of the bankruptcy estate. The debtors are engaged in a farming operation.

Prior to the filing of this bankruptcy, the debtors entered into a Debt Resolution Agreement (the "Agreement") with the Bank. The Agreement prohibits debtors from filing a voluntary petition under the Bankruptcy Code. If debtors file a bankruptcy proceeding, the Agreement prohibits debtors from resisting both a motion to lift the automatic stay of 11 U.S.C. § 362 and a motion to dismiss the bankruptcy case.[1]

The Bank seeks relief from the automatic stay, asserting that the Agreement prohibits debtors from resisting the motion and that the contractual waiver of the automatic stay is enforceable. The debtors assert that cause does not exist to lift the automatic stay under section 362(d), and that the provisions prohibiting resistance to the Bank's motion are not enforceable.

## LAW

It has long been settled that contractual provisions prohibiting the filing of a bankruptcy case are not enforceable. *See Fallick v. Kehr*, 369 F.2d 899, 904 (2d Cir.1966); *In re Weitzen*, 3 F.Supp. 698 (S.D.N.Y.1933).

The Bank concedes this point but argues that the debtors' waiver of the automatic stay should be enforced. The Bank relies on recent judicial decisions which enforce such waiver provisions. Indeed, commentators conclude that the majority judicial view, and trend in decisions, is to enforce pre-bankruptcy waivers of the automatic stay. *See*, Jeffery Dahlgren, *How do you Gel Relief? The Effectiveness of Prepetition Agreements for Relief from the Automatic Stay.* 9 Norton Bankr.Law Advisor, Sept. 1995, at 11; William Burnett, *Prepetition Waiver of the Automatic Stay: Automatic Enforcement Equals Automatic Trouble*, 5 J.Bankr.Law & Prac. 257 (1996).

Some courts have refused to enforce a waiver of the automatic stay. See *In re Jenkins Court Assocs.*, 181 B.R. 33 (Bankr. E.D.Pa.1995) (declining to enforce pre-petition Agreement with lender waiving automatic stay without full development of facts); *In re Madison*, 184 B.R. 686 (Bankr.E.D.Pa. 1995) (debtor's agreement to temporarily forego bankruptcy protection violates public policy and is unenforceable); *In re Sky Group Int'l, Inc.*, 108 B.R. 86 (Bankr. W.D.Pa.1989) (pre-petition agreements waiving the protections of the automatic stay are not self-executing and are not binding per se on the debtor); *Farm Credit, ACA v. Polk*, 160 B.R. 870 (M.D.Fla.1993) (same). The apparent trend in decisional law, particularly in the context of single asset cases, is to enforce contractual waivers of the automatic stay. See *In re Atrium High Point Ltd. Ptnrshp.*, 189 B.R. 599 (Bankr.M.D.N.C.1995) (pre-petition waivers by debtor of automatic stay protection are enforceable in appropriate cases where enforcement does not violate public policy concerns, but are not binding on third party creditors); *In re Cheeks*, 167 B.R.

---

**1.** The specific provisions which the Bank seeks to enforce are paragraphs 7(k), and 9(b) and (c) of the Agreement, which state:

Paragraph 7(k): Any petition in bankruptcy filed by Pease at any time prior to two years after the earlier of the effective date of this Agreement or the date of payment in full of the Total Debt shall be irrebuttably presumed to be a filing made in bad faith and Bank shall be entitled to immediate relief from the automatic bankruptcy stay or the dismissal of the bankruptcy proceeding, at its discretion.

Paragraph 9: *Negative Requirements.* Until such time as the Total Debt is paid in full, Pease shall not do any of the following:

. . . .

  b. File a voluntary petition in bankruptcy under any chapter of the United States Bankruptcy Code. . . .

  c. In any manner oppose or delay Bank in its right and entitlement to immediate dismissal of any bankruptcy proceeding filed by or against Pease or relief from the automatic stay resulting from any such filing.

817 (Bankr.D.S.C.1994) (pre-petition agreements are enforceable on policy grounds of encouraging out of court restructuring and settlements, but waivers are not self-executing and are not binding on third parties); *In re Powers,* 170 B.R. 480 (Bankr.D.Mass.1994) (same); *In re Club Tower L.P.,* 138 B.R. 307 (Bankr.N.D.Ga.1991) (pre-petition agreement granting creditor relief from the automatic stay was binding on the parties where bankruptcy was filed in bad faith); *In re Citadel Properties, Inc.,* 86 B.R. 275 (Bankr.M.D.Fla. 1988) (same); *In re Gulf Beach Dev. Corp.,* 48 B.R. 40 (Bankr.M.D.Fla.1985) (holding that while the debtor cannot be contractually precluded from filing bankruptcy, the stay would be lifted for cause).

## DISCUSSION

■ With due respect for existing decisional law, I conclude that the pre-bankruptcy waiver of the automatic stay of 11 U.S.C. § 362 is unenforceable, per se, because (1) the waiver is invalid due to debtors' lack of capacity to act on behalf of the debtor in possession; (2) the waiver is unenforceable under specific provisions of the Bankruptcy Code which limit the effectiveness of certain contractual provisions that take effect upon the filing of a bankruptcy case, *see* §§ 363, 365, 541; and (3) the Bankruptcy Code extinguishes the private right of freedom to contract around its essential provisions.

■ First, before the bankruptcy case is filed, the debtor does not have the capacity to waive the rights bestowed by the Bankruptcy Code upon a Chapter 11 debtor in possession. Prior to the commencement of the bankruptcy case, the debtor entity has the capacity to enter into an agreement binding upon the debtor under applicable non-bankruptcy law. Upon the commencement of a Chapter 11 bankruptcy case, the debtor becomes a "debtor in possession" with a fiduciary duty to creditors and rights and obligations under federal law. *See* §§ 1101, 1107. Those rights include the enforcement of the automatic stay, which protects the debtor in possession and property of the bankruptcy estate. *See* § 362(a). In this sense, the Chapter 11 debtor is a separate and distinct entity from the pre-bankruptcy debtor. Before the bankruptcy case is filed, the debtor does not hold the rights of a debtor in possession and does not hold fiduciary duties to creditors. The debtor certainly has capacity to enter into agreements which define the rights and obligations of the debtor under applicable non-bankruptcy law, and those agreements are generally given force and effect in bankruptcy cases. However, I conclude that the pre-bankruptcy debtor simply does not have the capacity to waive rights bestowed by the Bankruptcy Code upon a debtor in possession, particularly where those rights are as fundamental as the automatic stay. A debtor may not waive the automatic stay of 11 U.S.C. § 362 until after the bankruptcy case is commenced and the debtor is acting in the capacity as debtor in possession. Even then, however, the debtor in possession may not unilaterally waive the automatic stay. An agreement to modify or terminate the automatic stay requires court approval after notice and an opportunity to object is provided to all parties in interest. *See* Fed.R.Bankr.P. 4001(d).

■ Second, the Bankruptcy Code explicitly invalidates provisions of private agreements which deprive the debtor of the use and benefit of property upon the filing of a bankruptcy case. For example, Bankruptcy Code §§ 541(c), 363(*l* ) and 365(e) provide, respectively, that an interest of a debtor in property becomes property of the estate, and that the debtor is permitted to use, sell or lease that property (or if it is a contract or lease right, then the debtor may assume the executory contract or lease interest), *notwithstanding any provision in an agreement that is conditioned on the insolvency or financial condition of the debtor or the filing of a bankruptcy case.* Congress thus explicitly chose to invalidate provisions of private agreements that deprive the debtor of the use and benefit of property upon the filing of a bankruptcy case.

If the automatic stay is lifted in this case, the Bank will be free to immediately pursue its rights to collateral under applicable non-bankruptcy law. This will deprive the bankruptcy estate, the debtors, and other creditors, of the right of the debtors in possession to use the Bank's collateral in the reorganiza-

tional effort. Section 363(*l*) invalidates contractual provisions purporting to waive the automatic stay because enforcement of such a waiver deprives the debtor in possession of the ability to use, sell or lease the Bank's collateral. The enforcement of a pre-petition waiver of the automatic stay would impermissibly circumvent section 363(*l*). I conclude the Agreement's prohibition preventing the debtors' from resisting the motion for relief from stay is unenforceable under section 363(*l*).

▪ Third and finally, the Bankruptcy Code extinguishes the private right of freedom to contract around its essential provisions. This conclusion follows from the comprehensive nature of the Bankruptcy Code and its underlying purpose of providing a nationally uniform collective remedy to debtors and creditors. The judicial enforcement of a contractual waiver of the automatic stay would permit a single creditor to opt out of the collective process mandated by the Bankruptcy Code to the potential detriment of the debtor and other creditors. This should not be permitted.

Before a bankruptcy case is filed, creditors and debtors are embroiled in a system of state laws which focus upon the rights of individual creditors and debtors. Unpaid unsecured creditors must reduce their claims to judgment, at which time they obtain a judicial lien, usually restricted to real estate owned by the judgment debtor. Armed with a judgment, the creditor may seek to enforce it with the aid of a writ of execution or garnishment. State laws encourage liquidation of financially troubled businesses because the priority among unsecured creditors is determined by the notion that first in time is first in right. The first creditor to reduce its claim to judgment is the first to obtain a judicial lien. The first judgment creditor to execute or garnish similarly obtains priority over creditors who subsequently garnish or levy. State law rewards the belligerent liquidator and provides a disincentive to forebearance. The resolution of disputes between a debtor and creditors under state law often involves a multiplicity of lawsuits and high transactional costs. Generally, state laws do not provide effective collective remedies for creditors or for debtors. Composition and extension agreements and assignments for the benefit of creditors are state-recognized collective remedies, but they are of limited utility. Composition and extension agreements are useful agreements, but they do not provide an effective way to deal with belligerent creditors who will not sign the contract. Assignments for the benefit of creditors do not provide the debtor with a discharge and they do not provide a means for reorganization.

The filing of a bankruptcy case invokes federal law. In broadest terms, the Bankruptcy Code alters the substantive rights recognized under state law, and provides a collective remedy to both the debtor and to creditors.

The Bankruptcy Code substantively alters the rights and remedies of both debtors and creditors in a most fundamental way. For example, section 502 disallows certain claims which would be enforceable under non-bankruptcy laws. Under section 502(b), claims for unmatured interest are not allowed (except as provided in section 506), a landlord's claim under section 502(b)(6) for breach of a lease is limited in a manner inconsistent with the law of many states, and some claims are simply disallowed. *See* § 502(b)–(j). Sections 503 and 507 create, as a matter of federal law, a priority scheme among unsecured creditors. Section 552 cuts off the operation of after-acquired property clauses in security agreements. Section 108 provides debtors with extensions of certain non-bankruptcy deadlines in specified circumstances. The debtor is given broad authority to set aside and avoid certain pre-bankruptcy transactions under sections 544, 546, and 548. Most significantly, the Bankruptcy Code gives the debtor broad authority to use, sell or lease property, and to assume executory contracts and leases as a matter of federal law, notwithstanding the rights of creditors under applicable non-bankruptcy laws. *See* §§ 363, 364, 365. And, importantly from the debtor's standpoint, reorganization in bankruptcy permits the debtor to modify and impair the rights of creditors. *See* §§ 1123, 1124, 1129, 1222, 1225, 1322, 1325.

I conclude that any attempt by a creditor in a private pre-bankruptcy agreement to opt out of the collective consequences of a debtor's future bankruptcy filing is generally unenforceable. The Bankruptcy Code preempts the private right to contract around its essential provisions, such those found in 11 U.S.C. § 362. *Cf. In re N.B.I., Inc.*, 129 B.R. 212, 225 (Bankr.D.Colo.1991) (debtor's pre-bankruptcy fee agreement held not binding on debtor in possession).

The Bank is not without remedies. The Bankruptcy Code protects the Bank's interest in collateral. The Bank may, for example, (a) seek to lift the stay for cause under section 362; (b) file a liquidating plan under section 1121; (c) seek dismissal of the case under section 1112; (d) seek to convert the case to Chapter 7 under section 1112; or (e) seek appointment of a trustee or examiner under section 1104. Since the Bankruptcy Code provides adequate remedies to the Bank, there is no need or justification for enforcing the pre-bankruptcy Agreement waiving the automatic stay. Indeed, with the recent passage of section 362(d)(3), providing enhanced remedies to a creditor in a single asset real estate case, there is less justification for enforcing pre-bankruptcy waivers even in those extraordinary cases.

I therefore conclude that provisions in private pre-bankruptcy agreements, which purport to waive the automatic stay or provide that a debtor will not resist a motion for relief from stay, are not enforceable, per se, as a matter of federal bankruptcy law. To rule otherwise would encourage institutional lenders to adopt standardized waiver terms in form loan agreements. This would substantially undercut the relief Congress intended to provide debtors under the Bankruptcy Code.

IT IS THEREFORE ORDERED, that the motion for relief from stay is denied.