**In re George E. FALLON, Debtor.**

**In re Joye Hamer, Debtor.**

**Bankruptcy Nos. 99–14973DAS, 99–16601DAS.**

United States Bankruptcy Court, E.D. Pennsylvania, Philadelphia Division.

Feb. 14, 2000.

Christopher Bokas, Upper Darby, PA, for Fallon.

Alan Liss, Philadelphia, PA, for Hamer.

William J. Levant, Blue Bell, PA, for Equity One, Inc.

George E. Fallon, Upper Darby, PA, for debtor.

Joye Hamer, Berwyn, PA, for debtor.

Edward Sparkman, Philadelphia, PA, for Standing Chapter 13 Trustee.

Frederic Baker, Ass't U.S. Trustee, Philadelphia, PA, for United States Trustee.

*MEMORANDUM OPINION IN SUP-PORT OF ORDERS APPEALED IN ABOVE CASES*

DAVID A. SCHOLL, Bankruptcy Judge.

On February 7, 2000, and February 8, 2000, respectively, Equity One, Inc. ("Equity") filed Notices of Appeals ("the Fallon Notice" and "the Hamer Notice;" collectively "the Notices") from this court's Orders of January 31, 2000 ("the Fallon Order"), and February 3, 2000 ("the Hamer Order;" collectively "the Orders").[1] The Orders appealed from both granted Equity relief from the automatic stay to proceed to foreclose against and proceed to obtain possession of the homes of GEORGE E. FALLON ("Fallon") and JOYE HAMER ("Hamer," with Fallon, "the Debtors"), but declined Equity's further requests to preclude any future bankruptcy filings of the Debtors from operating as stays of sheriff's sales of the Debtors' respective homes. Although the proposed Fallon order limited this prospective effect to the period within 180 days from the entry of the order, the proposal Hamer order included no time limitation whatsoever.

The Fallon Order was entered, without a hearing, in response to a Certification of Fallon's Default ("the Certification") of the terms of a Stipulation ("Stipulation") entered into between Fallon and Equity, which this court mostly approved on July 7, 1999, but added the caveat that "[a]ny further court order shall be entered in the court's discretion." The Hamer Order was entered after a hearing of February 3, 2000, on a motion for relief from the automatic stay and a request that the automatic stay would not be effective against Equity in any further bankruptcies filed at any

1. The Hamer Notice purported to also appeal from our earlier order of June 29, 1999, in that case, which refused to grant a motion for relief from the automatic stay and a bar on refiling after a hearing of that date, but relisted that motion for further consideration at the initial confirmation hearing of October 12, 1999, and, later, the continued confirmation hearing of November 9, 1999, where it was deemed withdrawn when Equity failed to appear. Since the purported appeal from the June 29, 1999, order is obviously untimely, *see* Federal Rule of Bankruptcy Procedure 8002, we will not address that aspect of the Hamer Notice any further, but will assume that only the Hamer Order of February 3, 2000, is at issue.

time by the Debtor or her husband Alexander. Since no opinions nor further explanations accompanied the Orders, as is true of the vast majority of similar orders of this court, we are herein filing this Memorandum Opinion, pursuant to Local Bankruptcy Rule 8001–1(b), to briefly explain our reasons for entering the Orders in the form in which we did.

The Fallon Notice states that it is based upon denial of "prospective relief requested therein (and agreed to by the parties)." The parenthetical phrase apparently arises from recitations in the Stipulation referencing one previous Chapter 13 filing of the Debtor at Bankr. No. 98–14857DAS ("the 98 Fallon Case") and the presence of paragraphs 10, 11, and 12 of the Stipulation, which read as follows:

10. If this Chapter 13 case is dismissed for *any* reason prior to confirmation of a Chapter 13 Plan, said dismissal shall be deemed to be "with prejudice", and the Debtor shall thereafter be barred from further bankruptcy filings for a period of six months from the date of dismissal. If the dismissal occurs *after* confirmation of a Chapter 13 Plan, the dismissal will be *without* prejudice (and without the six-month "bar") unless the Court orders otherwise for cause shown.

11. Conversion of this case to a proceeding under another Chapter of the Bankruptcy Code shall operate as a default under the terms of this Stipulation, and shall entitle the Movant to file immediately a Certification of Default as above.

12. If the Movant gains relief from the automatic stay under the procedure set forth in Paragraphs 8 and 9 hereof [allowing the Certification process] (or if the case is dismissed for any reason prior to confirmation of a Chapter 13 Plan), *the parties specifically acknowledge that the Movant shall thereafter be* *free to proceed with the Sheriff's Sale of the premises, notwithstanding any future bankruptcy filing by this Debtor, provided that such Sheriff's Sale occurs not more than six months following the entry of the Order granting Relief (or the Order dismissing the case, whichever is first entered).* (emphasis in the original).

We note that Fallon's Chapter 13 Plan was confirmed, without objection, on November 4, 1999.

We have never had any evidentiary hearings in the Fallon Case, and therefore our knowledge of the actual underlying facts of Fallon's circumstances is confined to a review of the record. Our review of the record reveals that the 98 Fallon Case was filed on April 16, 1998, and dismissed on November 24, 1998, on the Motion of the Standing Chapter 13 Trustee's ("the Trustee"). Equity filed for relief from the automatic stay in that case, and that motion was reported settled on the same day that the 98 Fallon Case was dismissed. Although not referenced by Equity, we note that Fallon had one other previous bankruptcy filing, a Chapter 7 case filed at Bankr. No. 93–11747DAS which was closed on August 4, 1993, after Fallon had obtained a Chapter 7 discharge.

It is apparently the position of Equity, that, despite our qualification of our approval of enforcement of the language of the Fallon Stipulation in the future by rendering any further order subject to our discretion, it was *entitled* to an order enforcing the Debtor's waiver of the automatic stay as to his home pursuant to paragraph 12 of the Stipulation,[2] or that at least we abused our discretion in refusing to impose a waiver in the instant circumstances.

We are more familiar with the Hamer facts because we conducted an evidentiary hearing prior to the entry of our order of

2. Actually, the proposed Order submitted by Equity requested relief broader than paragraph 12. The proposed order requested a waiver of "any" sheriff's sale, while paragraph 12 contemplated a waiver as to Equity only.

June 29, 1999. *See* page 590 n. 1 *supra.* Hamer and her husband Alexander are both attorneys and are the parents of three children, aged 16, 7, and 5, residing with Hamer as of the date of the filing of her instant individual Chapter 13 bankruptcy case on May 20, 1999. Hamer had filed one prior bankruptcy case on August 14, 1998, at Bankr. No. 98–30386DAS ("the 98 Hamer Case"), which was dismissed on the Trustee's motion without confirmation of a plan on February 9, 1999, shortly after Equity successfully prosecuted a motion seeking relief from the automatic stay on January 14, 1999.

Hamer's husband also filed an individual Chapter 13 bankruptcy case *pro se* on August 14, 1997, at Bankr. No. 97–19954DWS, which was dismissed without confirmation on March 16, 1998. There was no evidence that Hamer participated in the decision of her husband to file his case. Hamer testified that her husband had been a successful immigration attorney, but was at that time incarcerated as the result of a criminal conviction arising out of his law practice, and the couple had since become estranged. Hamer stated that she had been a homemaker for several years and therefore was faced with developing a new law practice to pay on her mortgage and cure arrears through a Chapter 13 plan.

We found Hamer's facts compelling and her prospects for reorganization good. When Equity did not appear on October 12, 1999, to press the relisted motion, the motion was again carried to a continued confirmation hearing on November 9, 1999. On November 9, 1999, Hamer's plan was confirmed, without objection from, or even an appearance by, Equity, and the motion was deemed withdrawn. We therefore assumed that Hamer's fledgling law practice had materialized as she hoped, and we felt that we had given Hamer the clear opportunity to succeed which she deserved.

Unfortunately, this perception was apparently illusionary. On January 12, 2000, Equity refiled a motion seeking essentially the same relief as had the motion on which we conducted the hearing on June 29, 1999. Neither the Debtor nor her counsel appeared to contest the new motion at the hearing on it on February 3, 2000, and the Hamer Order under appeal was therefore entered. Recalling the Debtor's compelling facts, although we felt obliged to grant Equity relief, we were not inclined to foreclose any further efforts on her part to save the home of herself and her young family.

Comparing Hamer's facts with those of Fallon, we note that there was no Stipulation of counsel in Hamer, and therefore the only contention of Equity must be that the facts of record, which did not include any presentation of evidence or offer of same on February 3, 2000, justify the full relief sought by it as a matter of law.

Initially, we note that these appeals may be rendered moot after six months no matter what occurs in that time frame. By way of explanation, the failure of the Debtors to file another bankruptcy case within 180 days from the dates of the Orders at issue would render the bars on refiling unnecessary.[3] On the other hand, the Debtors' filing of other cases before the entry of orders staying or reversing the Orders at issue would create new automatic stays which would require new motions from Equity in order to obtain relief.

The principle on which we acted in entering the instant Orders, including that in Fallon despite the presence of the Stipulation, was that a bankruptcy court always retains discretion to grant or condition relief from the automatic stay in a particular manner. *See In re Reitano,* 1999 WL 99330, at *4 (Bankr.E.D.Pa. Feb. 25, 1999), citing *In re Holtkamp,* 669 F.2d 505, 507 (7th Cir.1982); *In re Foxcroft*

---

**3.** The bar sought in the Hamer case was, however, apparently not expressly limited to a 180–day period, although this may have been Equity's intention. A perpetual bar would of course constitute even more drastic relief.

*Square Co.,* 184 B.R. 671, 677 (E.D.Pa. 1995) (GAWTHROP, J.); and *In re Shariyf,* 68 B.R. 604, 606–07 (E.D.Pa.1986) (J. KELLY, J.). *See also In re Matthews,* 229 B.R. 324, 328 (Bankr.E.D.Pa.1999). This discretion would exist even if we had not expressly made reference to it in entering the order of July 7, 1999, approving the Fallon Stipulation. Therefore, we resist any notion that we were *required* to strictly enforce all terms of the Fallon Stipulation in entering the Fallon Order.

 With respect to whether our failures to include language waiving the stays in any potential future cases of the Debtors in both Orders constituted abuses of discretion, we note the following observations made by this court regarding such waivers in *In re Madison,* 184 B.R. 686, 690, 691 (Bankr.E.D.Pa.1995):

> Enforcement of even an agreement which only temporarily waives ... rights [to file a bankruptcy case] would appear sufficient to us to undermine the Congressionally-expressed public policy underpinning the Bankruptcy Code
>
> \* \* \* \* \* \*

The notion that a pre-petition waiver of a bankruptcy benefit is unenforceable is not novel. *See Klingman v. Levinson,* 831 F.2d 1292, 1296 n. 3 (7th Cir. 1987) (holding that debtors cannot waive their right to have a dischargeability question heard by a bankruptcy court); and *In re Ethridge,* 80 B.R. 581, 586 (Bankr.M.D.Ga.1987) (same). *See also Assoc. of St. Croix Condominium Owners v. St. Croix Hotel Corp.,* 682 F.2d 446, 448 (3d Cir.1982) (stating in dictum that a debtor cannot waive stay protection); *In re Jenkins Court Associates L.P.,* 181 B.R. 33, 37 (Bankr.E.D.Pa. 1995) (refusing to enforce a pre-petition waiver of the automatic stay); *In re Cheripka,* 122 B.R. 33, 37 (Bankr. W.D.Pa.1990), *aff'd,* 1991 WL 276289 (3d Cir. Dec. 31, 1991), *vacated,* No. 91–3249 (3d Cir. Jan. 22, 1992), *aff'd by equally divided court en banc,* No. 91–3249 (3d Cir. Feb. 24, 1992) (waiver of discharge held unenforceable); and *In re Sky Group Int'l, Inc.,* 108 B.R. 86, 89 (Bankr.W.D.Pa.1989) (pre-petition waiver of the automatic stay is unenforceable); and *In re Clark,* 69 B.R. 885, 889, *supplemented on other grounds,* 71 B.R. 747 (Bankr.E.D.Pa.1987) (a debtor cannot waive the stay).

*See also In re Norris* 39 B.R. 85, 87 (E.D.Pa.1984) (FULLAM, J.) ("a bankruptcy judge in a pending proceeding simply does not have the power to determine that the automatic stay shall not be available in subsequent bankruptcy proceedings").

 In light of our observations in *Madison* and *Norris,* the presence of the bar language in the Fallon Stipulation may be irrelevant, because it would be unenforceable as to any new filing by Fallon in any event. As we ultimately held in *Madison,* restrictions on future filings, if permitted at all, should be attached to new cases during their pendency, rather then tacked onto orders in prior cases. 184 B.R. at 692–94. In that way, the debtor is pre-warned that restrictions on refilings will be imposed, in addition to those provided for statutorily in 11 U.S.C. § 109(g), *before* such relief is granted. The issues on appeal in these cases may therefore be irrelevant as well as moot.

Assuming that inclusion of bar language in the Orders at issue is neither an irrelevant nor moot point, we nevertheless believe that any such relief was properly excluded in these instances. The instant cases are only the respective Debtors' second Chapter 13 filings. As of the date of the dismissal of the 1998 Fallon Case, Equity and the Debtor had reached a settlement of their differences, suggesting that these differences were not irreconcilable.

Equity had an opportunity to, but did not, revive its initial motion to seek relief from Hamer on October 12, 1999, and again on November 9, 1999, prior to confirmation of her plan. The instant cases both

resulted in a confirmed plans, to which Equity raised no objections.

We expressly found, and reiterate upon reconsideration of the specific facts of each case in light of a review of the files and their respective predecessor cases, that neither Debtors' conduct was proven to be abusive of the bankruptcy system such as would justify the extraordinary remedies of bars on either Debtors' future filings.

■ Equity may be advancing the viewpoint that no bankruptcy refilings whatsoever are permissible. Such a hard-line approach is difficult to square with the fact that plans were confirmed in both cases without objection by Equity. Generally, once a plan is confirmed, it is only a debtor's post-confirmation compliance with plan terms which is at issue in stay-relief motions. *See In re Smith,* 104 B.R. 695, 700 (Bankr.E.D.Pa.1989). It appears to us, given the binding effect of confirmation orders, *see In re Szostek,* 886 F.2d 1405, 1408–10, 1413 (3d Cir.1989); and *Rafferty v. First Union Mortgage Corp.,* 1998 WL 13584, at *3 (E.D.Pa. Jan. 9, 1998), that it is inappropriate, subsequent to confirmation, to seek relief based on a debtor's pre-confirmation conduct.

The position of Equity thus appears to be that multiple bankruptcy filings should be prohibited *per se.* While we would expect that most creditors would confine efforts to bar refilings to truly abusive situations, the facts of the Hamer Case present a quite compelling basis for not imposing such sanctions, and no evidence of abuse of the Code by Fallon was proven. Nevertheless, such relief is sought in these cases by Equity. Thus, we infer that Equity seeks to impose a prohibition on refiling in *any* circumstances.

■ As to the legal basis for such a *per se* rule, we observed in *Madison, supra,* 184 B.R. at 691–92, that

[i]n *Johnson v. Home State Bank,* 501 U.S. 78, 87, 111 S.Ct. 2150, 115 L.Ed.2d 66, (1991), the Court made clear that it did not believe that Congress prohibited

multiple bankruptcy filings per se in the following passage:

"Congress has expressly prohibited various forms of serial filings. *See, e.g.,* 11 U.S.C. § 109(g) (no filings within 180 days of dismissal); § 727(a)(8) (no Chapter 7 filing within six years of a Chapter 7 or Chapter 11 filing); § 727(a)(9) (limitation on Chapter 7 filing within six years of Chapter 12 or Chapter 13 filing). The absence of a like prohibition on serial filing of Chapter 7 and Chapter 13 petitions, combined with the evident care with which Congress fashioned these express prohibitions, convinces us that Congress did not intend categorically to foreclose the benefit of Chapter 13 reorganization to a debtor who previously has filed for Chapter 7 relief. *Cf. United States v. Smith,* 499 U.S. [160], [166], 111 S.Ct. 1180, [1185], 113 L.Ed.2d 134 (1991) (expressly enumerated exceptions presumed to be exclusive)."

In addition to being contrary to the Bankruptcy Code as interpreted by the Court, such a rule would also be a questionable social policy. *See* S. DeJarnatt, *Once Is Not Enough: Preserving Consumers Rights to Bankruptcy Protection,* 74 IND.L.J. 455, 495–500 (1999) (describing scenarios in which multiple bankruptcy filings may be necessary for debtors).

That aspect of the Fallon facts relating to the Stipulation which was entered into by Fallon's counsel reveals an unfortunate aspect of consumer bankruptcy law practice. Because of the volume of such cases and the limited ability of many consumer debtors to pay reasonable fees to defend overly-aggressive mortgagees' tactics, consumers often find themselves doing what should theoretically never be done, namely, agreeing to terms of settlement stipulations which are more oppressive than those which courts would ever impose if the motions for relief went to trial. Both Debtors' factual situations bring to bear scenarios where debtors and their counsel

failed to appear to defend against motions which sought far greater relief than the facts warranted. For this reason we are as cautious in approving or enforcing stipulations settling motions for relief as in entering oppressive orders in such matters even when they are seemingly uncontested.

We believe that both the Bankruptcy Code and our Oath of Office require us to examine these Stipulations carefully, even in the face of lack of opposition to their entry at the time. In that way inequities and injustices to which the court is a party can be minimized.

The foregoing are the considerations that went into our exercise of discretion in the entry of the Orders in question.