OPINION OF THE COURT
Barry A. Cozier, J.
Plaintiff Transmedia Restaurant Co., Inc., doing business as *707 Transmedia Network, Inc. (Transmedia), moves for summary judgment, pursuant to CPLR 3212, on its first cause of action, in the amount of $161,731.38, together with interest from February 13, 1998; on its second cause of action for costs, expenses and reasonable attorneys’ fees; and for dismissal of defendant’s affirmative defenses and counterclaim.
FACTUAL ALLEGATIONS
Plaintiff is a food service network which makes cash advances to restaurants in exchange for food and beverage credits (Transmedia Credits). These credits are redeemed by Transmedia cardmembers who receive a 25% discount each time they dine at a participating restaurant. The full amount of the card-member’s restaurant check, less taxes and gratuities, is applied to the reduction of the outstanding Transmedia Credit balance of the participating restaurant.
In April 1995, Transmedia entered into a written agreement (the April Agreement) with 33 East 61st Street Restaurant Corp. (the Corporation), doing business as L’Orangerie. The April Agreement, executed by Sylvain Fareri, the Corporation’s president, provided for a cash advance of $60,000 to the Corporation, which was to be repaid in $120,000 of food and beverage credits at the restaurant located at 33 East 61st Street, New York, New York (the subject premises).
In February 1997, the April Agreement was amended with the Corporation’s new shareholders (the First Amendment), who intended to reopen the restaurant at the subject premises under the name Gertrude’s. The First Amendment reflected the current outstanding balance of food and beverage credits to be $244,858.71. It also provided that all Transmedia charges would be processed, pursuant to the terms of the April Agreement, up to an aggregate amount of $10,000. For the first 12 months of Gertrude’s operations, 65% of all Transmedia charges in excess of $10,000 per month were to be remitted to the restaurant. For the second 12-month period, the restaurant would receive 65% of all Transmedia charges in excess of $15,000 per month. The First Amendment was conditioned upon the commencement of restaurant operations at the subject premises on or prior to June 20, 1997.
On May 9, 1997, the parties executed another amendment to the April Agreement (the Second Amendment), which was identical to the First Amendment, except that the contingency contained therein was extended to August 1, 1997. Gertrude’s opened in July 1997.
*708 On February 6, 1998, a letter was sent, on behalf of Trans-media, to the Corporation advising that it was in default of the April Agreement (the Letter) due to its alleged failure to honor the Transmedia cards presented by Transmedia cardmembers. Pursuant to the terms of the agreement, Transmedia demanded immediate payment of $161,731.38, representing 75% of the Corporation’s outstanding Transmedia Credits.
Since the Corporation did not pay any portion of the amount demanded in the Letter, Transmedia commenced this action to recover $161,731.38, together with costs, expenses, and counsel fees. The Corporation interposed an answer, which contained four affirmative defenses and three counterclaims.
In support of its motion for summary judgment, Elliot Merberg, Transmedia’s vice-president, submits, inter alia, the April Agreement, the First and Second Amendments, and defendant’s answer to plaintiffs first set of interrogatories, dated August 10, 1998. Relying on the latter document, Merberg argues that the Corporation does not deny its execution of the April Agreement or the First Amendment, and thus cannot now object to the amount of Transmedia Credits which it acknowledged in the First Amendment.
Transmedia also contends that, contrary to the Corporation’s allegations, the April Agreement was not usurious, pursuant to Penal Law § 190.40, since it does not require absolute repayment of the amount advanced by Transmedia. With respect to the Corporation’s present objection to the calculation of Trans-media Credits set forth in the First Amendment, Transmedia notes that the Corporation, under the new ownership, had two separate opportunities to question the accuracy of the amount, i.e., upon the signing of the First and Second Amendments, and yet failed to do so. Therefore, Transmedia argues that the Corporation is now bound to the amount that it acknowledged in these agreements. Additionally, Transmedia maintains that it properly reduced the Corporation’s Transmedia Credits in accordance with the language in the First and Second Amendments.
In opposition, Joel Seiden, the Corporation’s vice-president, admits that after signing an agreement to purchase the Corporation, he negotiated the Corporation’s outstanding debts, including that with Transmedia, and executed the First Agreement. He, however, maintains that his acknowledgment of the amount of Transmedia Credits owed by the Corporation was based on the balance shown on the monthly statements received from Transmedia. He now contends that the amount *709 was erroneous, and seeks a modification of the amount based upon, inter alia, his alleged unilateral mistake of fact.
Seiden also argues that Transmedia’s final computation of the Corporation’s outstanding Transmedia Credits is inaccurate. He contends that, although the language in the First Amendment is silent as to what is to be done with the remaining 35% of all monthly Transmedia charges made in excess of the first $10,000, he understood it to mean that the remaining .amount would be applied to reduce the balance, which Trans-media did not do. He also maintains that Transmedia did not reduce the Corporation’s Transmedia Credits by any Transmedia charges submitted after October 1997.
Lastly, Seiden argues that the April Agreement was usurious, pursuant to Penal Law § 190.40, since the repayment of the $60,000 cash advancement in $120,000 in food and beverages essentially is a loan at 100% interest.
In reply, Transmedia argues that the April Agreement does not constitute a loan agreement, and thus that the usury laws do not apply. It further maintains that, even assuming, arguendo, that the April Agreement was considered a loan, it was not usurious, since the requisite intent to enter into a usurious agreement was not present, and also that Transmedia bore a substantial risk that it would not be repaid.
DISCUSSION
The proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact. (Winegrad v New York Univ. Med. Ctr., 64 NY2d 851 [1985].) Once a prima facie showing has been made, the burden then shifts to the opposing party, who must proffer evidence in admissible form establishing that an issue of fact exists, warranting a trial of the action. (Alvarez v Prospect Hosp., 68 NY2d 320 [1986].)
The Corporation acknowledges that it executed the April Agreement and the First Amendment. Generally, “the signer of a written agreement is conclusively bound by its terms unless there is a showing of fraud, duress or some other wrongful act on the part of any party to the contract,” which the Corporation has failed to do. (Dunkin’ Donuts v Liberatore, 138 AD2d 559, 560 [2d Dept 1988].) Notwithstanding, the Corporation seeks to be relieved of its obligation to pay the amount of Transmedia Credits acknowledged by it in the First Amendment, claiming that it was based upon Seiden’s unilateral *710 mistaken belief that the amount therein was the correct outstanding balance. As part of its burden in seeking to void the Corporation’s liability under the First Amendment based on unilateral mistake of fact, the Corporation is required to show that, despite the exercise of ordinary care, it had no knowledge of the mistake. (See, Desiderato v N & A Taxi, 190 AD2d 250, 253 [1st Dept 1993].) However, while Seiden, the Corporation’s vice-president, acknowledges that he entered into negotiations with Transmedia regarding the Corporation’s, outstanding debt, he argues that he relied on the monthly statements received by the Corporation from Transmedia. Prior to executing the First Amendment, Seiden could have exercised ordinary care by questioning the accuracy of the balance, which admittedly he did not do. His failure to verify the outstanding Transmedia Credits cannot now serve as a basis for voiding or modifying the Corporation’s obligations under the First Amendment.
The Corporation further argues that the April Agreement is usurious. Initially, this court notes that, although a corporation is generally prohibited from interposing the defense of usury in an action (General Obligations Law § 5-521 [1]; see, Schneider v Phelps, 41 NY2d 238, 242 [1977]), this prohibition is not applicable to any action, such as the instant one, where the corporation interposes a defense of criminal usury under Penal Law § 190.40. (General Obligations Law § 5-521 [3]; see, 72 NY Jur 2d, Interest and Usury, § 131.)
Penal Law § 190.40 states that: “[a] person is guilty of criminal usury in the second degree when, not being authorized or permitted by law to do so, he knowingly charges, takes or receives any money or other property as interest on the loan or forbearance of any money or other property, at a rate exceeding twenty-five per centum per annum or the equivalent rate for a longer or shorter period.”
There is a strong presumption against the finding of usury. (See, Giventer v Arnow, 37 NY2d 305, 309 [1975].) A defendant seeking to interpose the defense of usury must prove all of the essential elements thereof by clear evidence. (Greenfield v Skydell, 186 AD2d 391 [1st Dept 1992].) It is well settled that there can be no usury in the absence of a loan or forbearance of money. (Donatelli v Siskind, 170 AD2d 433, 434 [2d Dept 1991].) In order for a transaction to constitute a loan, there must be a borrower and a lender; and it must appear that the real purpose of the transaction was, on the one side, to lend money at usurious interest reserved in some form by the *711 contract and, on the other side, to borrow upon the usurious terms dictated by the lender. (Supra.) Further, there can be no usury unless the principal sum advanced is repayable absolutely. (72 NY Jur 2d, Interest and Usury, § 85.)
In the instant case, the Corporation’s reliance on the defense of criminal usury is unjustified. The April Agreement provides for a cash advance to the Corporation in exchange for Trans-media Credits, which can only be redeemed by the presentation of a Transmedia card by Transmedia cardholders at the Corporation’s restaurant located at the subject premises. Except in the case of a default or breach of the April Agreement, Transmedia bears the risk of not being repaid the advanced funds. The April Agreement, thus, does not constitute a loan of money, and, in the absence of a loan, there can be no usury. (Donatelli v Siskind, supra.)
The court, however, agrees with the Corporation’s argument that Transmedia did not properly apply the Corporation’s Transmedia charges in reducing its outstanding Transmedia Credits. While the parties acknowledge that the First Agreement required Transmedia to remit 65% of all charges in excess of $10,000 per month to the Corporation, they disagree as to whether the remaining 35% was to be applied towards reducing the Corporation’s outstanding Transmedia Credits. The parties refer to paragraph 2 in support of their respective arguments, which provides as follows:
“2. for a period of 12 months subsequent to the commencement of restaurant operations by the Establishment (the ‘Initial Period’), all Transmedia charges will be processed pursuant to the terms of the Original Agreement, up to an aggregate amount of $10,000 in food and beverage charges per month (the ‘Initial Cap’).
“B. For all Transmedia charges in excess of the Initial Cap (the ‘Excess Charges’), occurring in any month during the Initial Period, Transmedia shall pay the [Corporation] an amount equal to 65% of the food and beverage charges on any Transmedia charge slips relating to the Excess Charges, within ten (10) days of the submission of such charge slips to Trans-media.”
The First Amendment also provides that “except as modified above, all terms of the [April] Agreement remain in full force and effect.” (First Amendment ][ 6.)
The law is well settled that the parties’ intention should be determined from the language employed within the four *712 corners of the agreement, and that where the language is clear and unequivocal, interpretation is a matter of law to be determined by the court. (Hartford Acc. & Indem. Co. v Wesolowski, 33 NY2d 169, 172 [1973]; see also, American Express Bank v Uniroyal, Inc., 164 AD2d 275, 277 [1st Dept 1990], lv denied 77 NY2d 807 [1991].) Circumstances extrinsic to the agreement will not be considered when the intention of the parties can be gathered from the instrument itself. (American Express Bank v Uniroyal, Inc., supra.) However, if there is ambiguity in the terminology used, and determination of the intent of the signatories depends on the credibility of extrinsic evidence or on a choice among reasonable inferences to be drawn from extrinsic evidence, then such determination should not be resolved by way of summary judgment. (See, Hartford Acc. & Indem. Co. v Wesolowski, supra; see also, Chemical Bank v Flushing Sav. Bank, 146 AD2d 473, 478 [1st Dept 1989].)
As noted by the Corporation, paragraph 2 is silent as to what is to be done with the remaining 35% of the monthly excess charges. However, when read in connection with the whole contract, particularly with paragraph 6, it is clear that in the absence of any language regarding the application of the remaining 35% of the excess charges, it should be treated pursuant to the terms of the April Agreement, which provide for the application of all credits towards the reduction of the Corporation’s outstanding Transmedia Credits. Therefore, Transmedia’s admitted failure to reduce the Corporation’s balance in accordance with the terms of the First Amendment warrants denial of Transmedia’s application for summary judgment in the amount of $161,731.38. Further, there is a question of fact as to whether Transmedia has reduced the Corporation’s balance by any of the Transmedia charges submitted after October 1997.
Therefore, Transmedia’s motion for summary judgment on its two causes of action and for dismissal of the Corporation’s affirmative defenses and counterclaims is granted to the extent of dismissing the Corporation’s first affirmative defense and first counterclaim (based on the criminal usury defense), and the second and third affirmative defenses and second counterclaim (based on the alleged inaccurate balance acknowledged in the First Amendment). In all other respects, it is denied. Accordingly, it is ordered that Transmedia’s motion for summary judgment on its two causes of action and for dismissal of the Corporation’s affirmative defenses and counterclaims is granted only to the extent of dismissing the Corporation’s first, second *713 and third affirmative defenses, and its first and second counterclaims; and it is further ordered that Transmedia’s motion is denied in all other respects.