OPINION OF THE COURT
David F. Everett, J.
A judgment based on a loan agreement that is usurious on its face does not require a plenary action to vacate that judgment. The fact that the loan agreement is denominated by another name does not shield it from a judicial determination that such agreement contemplates a criminally usurious transaction.
Defendants Volunteer Pharmacy Inc., doing business as Volunteer Pharmacy (VP), Toby C. Frost (T. Frost) and Camilla Frost (C. Frost) move for an order, pursuant to CPLR 5015, vacating the confession of judgment, voiding the written merchant agreement, and cancelling and enjoining prosecution on the merchant agreement on the ground that it contemplates an illegal transaction. The motion is opposed.
The motion is granted."
The following facts are taken from the parties’ motion papers, opposition papers, annexed exhibits and the record, and are undisputed unless otherwise indicated.
On or about June 21, 2016, plaintiff Merchant Funding Services, LLC (MFS) filed an affidavit of nonpayment in sup *318 port of the entry of a confession of judgment in the Office of the Westchester County Clerk. Along with the affidavit of nonpayment, MFS submitted copies of two affidavits of confession of judgment dated February 11, 2016. One was executed by C. Frost and the other by T. Frost. In their respective affidavits, C. Frost and T. Frost confessed judgment and authorized the entry of judgment in favor of MFS and against VP and each of them in the sum of $74,750, less any payments timely made under the terms of a written document drafted by MFS entitled merchant agreement (agreement). Both affidavits of confession of judgment were dated and executed on the same date as the agreement, that being February 11, 2016.
The affidavit of nonpayment submitted in support of entry of the confession of judgment states, in relevant part, that on February 11, 2016, VP entered into a secured merchant agreement pursuant to which “MFS agreed to buy all rights of the Defendant VP’s future accounts-receivable, having a face value of $74,750.00. The purchase price for these receivables was $50,000.00” (aff of nonpayment ¶ 3). The affidavit of nonpayment further states: “[p]ursuant to the Agreement, Defendant VP authorized MFS to debit from its bank account, by means of an online ACH [Automated Clearing House] debit, a percentage of Defendant VP’s accounts-receivable (the ‘Specified Percentage’), until the purchased amount of receivables— $74,750.00—was paid in full” (aff of nonpayment ¶ 4). The specified percentage set forth in the agreement is 15%.
The judgment of confession entered in the Office of the West-chester County Clerk on June 23, 2016 adjudged MFS entitled, with execution thereof, to recover from defendants, jointly and severally, the sum of $34,887, plus interest at 16% in the amount of $107.05, plus costs and disbursements in the amount of $225, plus attorneys’ fees in the amount of $8,721.75, for a total sum of $43,940.80.
Defendants now move for an order vacating the judgment on the ground that the underlying agreement constituted a usurious loan, cloaked as a purchase of defendants’ receivables, based on: the lack of forgiveness of the loan if defendants are unable to collect the receivables; the annual percentage rate of 167% for the $50,000 loan resulting from fixed payments of $999 each business day over a period of approximately 105 days; and the agreement’s elimination of all risk and contingency from plaintiff’s ability to collect, and that enforcement of a judgment based on a usurious contract is improper and against public policy.
*319 In his affidavit in support of the motion to vacate, T. Frost avers that “MFS never asked for the identity of any receivable or customer of [VP],” and that the only review performed by MFS prior to entering into the transaction was that of “prior bank statements to gauge [VP’s] cash flow” (T. Frost at 2). T. Frost denies any connection or relationship between MFS and VP’s receivables, stating “MFS no more purchased [VP’s] receivables than a bank which gives people loans after getting proof of their employment is purchasing their future paychecks” (id.). He argues that the agreement was drafted so as to remove all risk and contingency from MFS, with VP’s guarantors responsible for full payment, without contingency, should there be an event of default under the agreement, and points to certain provisions in the agreement which support his position.
MFS opposes the motion as procedurally defective for not proceeding by way of a plenary action, and on the ground that the agreement between it and the corporate defendant is not usurious, because it memorialized a purchase and sale of future accounts receivable, rather than a loan. It is MFS’s position that the agreement constitutes evidence confirming that MFS provided $50,000 to VP in exchange for the return of $74,750, denominated in the agreement as the “Receipts Purchased Amount.” According to the affidavit of nonpayment submitted in opposition by MFS underwriter Tsvi Davis (Davis), VP defaulted after making payments totaling $39,863, leaving a balance due and owing in the amount of $34,887 (notice of motion, exhibit D). Davis further states that, under the terms of the confession of judgment affidavits, MFS is also entitled to legal fees equal to 25% of the default amount ($34,887), for the sum of $8,741.75, plus costs (id.).
CPLR 5015 (a) (3) provides that the court may vacate a judgment on grounds of “fraud, misrepresentation, or other misconduct of an adverse party.” Here, defendants contend that the agreement is criminally usurious and void ab initio as a matter of law, because it contemplates payment by the corporate defendant of interest at the annual rate of 167%, a rate that exceeds the legal rate of interest of 25% for a corporation (see Penal Law § 190.40).
To this end, defendants maintain that the specified percentage of 15%, as set forth in the agreement, is unrelated to the actual interest rate being charged, explaining, in relevant part, that
*320 “[i]f a lender makes a loan at 167% annual interest and calculates that this 167% interest loan can be repaid using 15% of the borrower’s income, and the lender calls the 15% a ‘specified percentage’ of the daily income, the 15% has nothing to do with the interest rate being paid on the loan. The interest rate is 167%. Plaintiff’s agreement made the ‘specified percentage’ irrevelant by writing it out of the agreement and replacing it with the fixed daily payment of $999.00.”
It is well settled that, while the defense of civil usury is unavailable to corporate entities in New York, the defense of criminal usury may lie in situations where the lender knowingly charges a corporate entity annual interest in excess of 25% on a loan. Penal Law § 190.40 states that
“[a] person is guilty of criminal usury in the second degree when, not being authorized or permitted by law to do so, he knowingly charges, takes or receives any money or other property as interest on the loan or forbearance of any money or other property, at a rate exceeding twenty-five per cen-tum per annum or the equivalent rate for a longer or shorter period.”
A finding of criminal usury requires:
“proof that the lender (1) knowingly charged, took or received (2) annual interest exceeding 25% (3) on a loan or forbearance. The first element requires proof of the general intent to charge a rate in excess of the legal rate rather than the specific intent to violate the usury statute. Accordingly, the borrower satisfies his prima facie burden of proving usury by showing that the note given to the lender evidences a loan and reserves an illegal rate of interest. If usury is proved, the loan is deemed void, and the lender sacrifices his principal and interest” (In re Venture Mtge. Fund, L.P, 245 BR 460, 473-474 [SD NY 2000] [citations omitted]; General Obligations Law § 5-511 [2]).
“In order for a transaction to constitute a loan, there must be a borrower and a lender; and it must appear that the real purpose of the transaction was, on the one side, to lend money at usurious interest reserved in some form by the contract and, on the other side, to borrow upon the usurious terms dictated by the lender” (Donatelli v Siskind, 170 AD2d 433, 434 [2d Dept 1991] [citations omitted]).
*321 “Further, there can be no usury unless the principal sum advanced is repayable absolutely” (Transmedia Rest. Co. v 33 E. 61st St. Rest. Corp., 184 Misc 2d 706, 711 [Sup Ct, NY County 2000]). The question here is whether the particular transaction under scrutiny was “made in good faith and not as a cover for a loan” (72 NY Jur 2d, Interest and Usury § 85), and what effect to give to C. Frost’s and T. Frost’s guarantees, since the giving of a guaranty is one of the factors “to be considered in determining whether the transaction is in fact a loan or purchase and sale” (id.).
“There can be no usury unless the principal sum advanced is repayable absolutely. If it is payable upon some contingency that may not happen, and that really exposes the lender to a hazard of losing the sum advanced, then the reservation of more than legal interest will not render the transaction usurious, in the absence of a showing that the risk assumed was so unsubstantial as to bear no reasonable relation to the amount charged.
“This risk of loss is to be distinguished from the risk of nonpayment that is inherent in every loan and that may only be compensated for by statutory interest; the risk of loss by the death or insolvency of the borrower is the ordinary risk that every person runs who lends money on personal security only” (72 NY Jur 2d, Interest and Usury § 87).
MFS asserts, in the aforementioned affidavit of nonpayment, that it agreed to buy all rights to VP’s future accounts receivable, having a face value of $74,750, for a purchase price of $50,000, and that the repayment of the $74,750 was to be accomplished by debiting VP’s bank account by the specified percentage of 15% until that amount was paid in full. The documents belie this claim, and the court is troubled by the inclusion of this misstatement in the affidavit submitted to the County Clerk and court.
The Addendum to Secured Merchant Agreement (addendum) states, in pertinent part:
“1. Should any of the terms of this Addendum conflict with the terms of the agreement . . . then the terms of this Addendum shall govern and be controlling . . .
“a. By signing below, the Merchant hereby requests and acknowledges that the Specified Percentage shall be revised to $999.00 per business day” (notice *322 of motion, exhibit A).
Therefore, doing basic mathematical calculations, the controlling payment schedule set forth in the agreement with addendum contemplates a criminally usurious interest rate of approximately 167%, as claimed by VP.
In addition, there is absolutely no evidence that the parties’ arrangement contemplated plaintiff to be an investor or partner in defendants’ business. MFS fails to point to a non-recourse provision in the agreement by which it assumed the risk that it might not be able to collect payments from VP’s accounts receivable. Merely telling the court that risk is contemplated under the terms of the agreement is inadequate, especially where, as here, the agreement provided for court review is illegible, with excessively small print (aff in opp, exhibit A). The requirement of the two guarantors, along with the other facts and circumstances set forth clearly demonstrate that the principal sum advanced was absolutely repayable with calculated interest that exceeds the legal rate (72 NY Jur 2d, Interest and Usury § 85; Penal Law § 190.40), and supports a finding that the evidence outweighs the presumption against a finding of usury (Freitas v Geddes Sav. & Loan Assn., 63 NY2d 254, 261 [1984]).
Upon review of the documents and consideration of the parties’ respective arguments, the court comes to the inevitable conclusion that the real purpose of the agreement was for plaintiff to lend money to defendants at the usurious interest rate set forth therein, and that defendant agreed to borrow the money based on the same usurious terms dictated by plaintiff. In its opposition, MFS offers no evidence that it purchased certain of VP’s receivables, that such receivables were dedicated to the repayment of the monies loaned, and that the risk inherent in the payment by way of these receivables was borne by MFS. Denominating a loan document by another name, as in this case, by calling it a merchant agreement, and including in it verbiage of MFS’s purported purchase of accounts receivable that is unsupported by actual VP receivables dedicated to repayment, does not shield it from the judicial determination that it contemplates a criminally usurious transaction, which is void ab initio as a matter of law.
Finally, the court disagrees with MFS’s contention it must deny VP’s motion due to its failure to proceed by way of a plenary action. Where, as here, the agreement, on its face, contemplates a criminally usurious transaction, there is no *323 question of fact for a trier of fact to resolve, and a motion under CPLR 5015 is adequate.
In further clarification of the court’s position, it should be noted that when the Appellate Division, Second Department, last addressed this issue, it stated: “Generally, a person seeking to vacate a judgment entered upon the filing of an affidavit of confession of judgment must commence a separate plenary action” (Regency Club at Wallkill, LLC v Bienish, 95 AD3d 879, 879 [2012] [emphasis added]). The specific use of the word “generally” would seem to indicate that there is no ironclad requirement for a plenary action in all such cases. While cases dating back at least 65 years have held that a motion by “a judgment debtor who seeks to set aside a judgment entered by confession, on grounds of fraud or misconduct, must proceed by plenary action, not by motion,” those cases “have so held, on grounds that sharply contested issues of fact should not be resolved upon affidavits, but rather by trial in a plenary action” (Scheckter v Ryan, 161 AD2d 344, 345 [1990]).
In the instant case, however, the submitted affidavits and exhibits clearly and unequivocally demonstrate that the agreement is criminally usurious on its face, obviating the need for a superfluous plenary action. Scheckter makes reference to Siegel, New York Practice § 302 (1978), which states, “[U]nder CPLR 5015(a)(3) a mere motion would seem adequate to the task today.” The court agrees with that observation. In particular, by recognizing the lack of necessity for a plenary action in cases where criminal usury is clear from the submissions attendant to a motion under CPLR 5015 (a) (3), the victims of predatory lending through such illegal loan agreements are spared the needless cost in time and money of pursuing a plenary action, the outcome of which would be the same.
Accordingly, it is ordered that defendants’ motion is granted; and it is further ordered that the confession of judgment, under index No. 58741/2016, entered in the Office of the Westchester County Clerk on June 23, 2016, is vacated.

 This decision and order is issued sua sponte for the sake of further clarification of the court’s determination. It in no way changes the outcome of the court’s original decision and order, the decretal paragraphs of which remain the same.