*471 OPINION OF THE COURT
David F. Everett, J.
Denominating a loan document by another name does not shield it from a judicial determination that such agreement contemplates a criminally usurious transaction.
Plaintiff Pearl Capital Rivis Ventures, LLC, represented by counsel, commenced this action against RDN Construction, Inc., Robbie Neely, as guarantor, by filing a summons with notice seeking to recover on its causes of action for unjust enrichment and breach of contract, the sum of $9,481, together with attorney’s fees in the amount of $3,160, for a total of $12,641, plus interest from July 2, 2015, costs and disbursements. Issue was not joined as defendants failed to answer, move or otherwise appear in the action. Thereafter, by motion dated March 10, 2016, plaintiff moved for a default judgment against defendants.
The subject contract is a document titled “Merchant Agreement” dated December 2, 2014 (agreement). The agreement, provided by plaintiff to defendants, contains the following pertinent terms: “Purchase Price: $9,000.00 Specified Percentage 15[1] Specific Daily Amounts: $198 Receipts Purchased Amount: $13,050” (see exhibit 1, agreement). In support of its motion for a default judgment, plaintiffs claimed, and defendants, by their default, did not dispute that, they (defendants) breached the agreement by failing to make payments thereunder in the amount of $9,481. According to the affidavit of Pearl’s head of underwriting, submitted in support of the motion for default, the ledger annexed to that motion
“shows that Defendants began with a total of loaned funds of $13,050.00,[2] against which they paid a total of $6,734.00, leaving a balance due of $6,316.00, to which—per the agreement—has been added check bounce fees of $665.00 and the contractual default fee of $2,500, making a total due of $9,481.00.”
Plaintiff also claimed entitlement, under agreement paragraphs 3 and 4, to recover any costs associated with this action, plus *472 reasonable attorney fees in the amount of $3,160. Plaintiff also alleged that defendant Neely guaranteed defendant RDN’s performance under the agreement.
By prior order of another justice, before whom this matter was then pending, a default judgment was granted on April 29, 2016, as to the issue of liability, after which plaintiff filed a notice of inquest and certificate of readiness on May 4, 2016. An inquest was held before this court on September 16, 2016, and the court makes findings based on the evidence presented at that time.
The sole witness presented by plaintiff was Pearl’s chief risk officer. Based on the witness’s sworn testimony, plaintiff loaned $9,000 to defendant RDN with an agreed-upon total payback amount of $13,050. Defendant reportedly also agreed to a $2,500 default penalty plus attorney’s fees. The witness testified that defendant was supposed to make 66 payments of $198 each. The payments of $198 were to be made every weekday, excluding legal holidays, until there was a total payback of $13,050, i.e., a period of approximately 13 weeks. Pearl had access to debit electronically the aforesaid payments from RDN’s bank account, into which RDN was supposed to deposit its receivables.
The witness testified that defendant paid back $6,700 of the $9,000 loaned, but at some point, the debit requests for $198 per day started to bounce. The witness testified that the parties renegotiated defendant’s payment schedule, adjusting it downward to $100 per day, but the $100 debits bounced as well. The witness testified that defendant incurred the $2,500 default fee pursuant to contractual language that states that such amount is owed if debits “bounce” four or more times consecutively, or there is a total of eight “bounces” throughout the term of the “advance,” both of which events are alleged to have happened in this case. The witness further testified Pearl charged defendant $665 in bounced debit fees, based on a charge of $35 for each of the 19 bounced debits, which the witness testified is the amount it was charged by the bank for each bounce.
Based on the witness’s testimony, and a concern that plaintiff might be seeking a criminally usurious award, the court questioned the witness about the daily interest rate, which the witness testified he was unable to provide. Relying on the figures contained in the agreement and the testimony of the witness, and using the traditional method of computation in *473 determining whether interest is usurious (see Band Realty Co. v North Brewster, Inc., 37 NY2d 460 [1975]), the court calculated that the agreement mandated an interest rate of approximately 180% per annum. The fact that defendants defaulted does not preclude this court from addressing the issue of an illegal transaction and unclean hands, because “it would be most inappropriate to permit a usurer to recover on a loan for which he could be prosecuted” (Blue Wolf Capital Fund II, L.P. v American Stevedoring, Inc., 105 AD3d 178, 184 [1st Dept 2013] [internal quotation marks and citation omitted]; Janke v Janke, 47 AD2d 445, 449-450 [4th Dept 1975], affd 39 NY2d 786 [1976]; Holland v Ryan, 307 AD2d 723, 725 [4th Dept 2003]).
While the defense of civil usury is unavailable to corporate entities in New York, the defense of criminal usury may lie in situations where the lender knowingly charges a corporate entity annual interest in excess of 25% on a loan. Penal Law § 190.40 states that
“[a] person is guilty of criminal usury in the second degree when, not being authorized or permitted by law to do so, he knowingly charges, takes or receives any money or other property as interest on the loan or forbearance of any money or other property, at a rate exceeding twenty-five per cen-tum per annum or the equivalent rate for a longer or shorter period.”
A finding of criminal usury requires:
“proof that the lender (1) knowingly charged, took or received (2) annual interest exceeding 25% (3) on a loan or forbearance. The first element requires proof of the general intent to charge a rate in excess of the legal rate rather than the specific intent to violate the usury statute. Accordingly, the borrower satisfies his prima facie burden of proving usury by showing that the note given to the lender evidences a loan and reserves an illegal rate of interest. If usury is proved, the loan is deemed void, and the lender sacrifices his principal and interest” (In re Venture Mtge. Fund, L.P., 245 BR 460, 473-474 [SD NY 2000] [citations omitted]; General Obligations Law § 5-511 [2]).
“In order for a transaction to constitute a loan, there must be a borrower and a lender; and it must appear that the real purpose of the transaction was, *474 on the one side, to lend money at usurious interest reserved in some form by the contract and, on the other side, to borrow upon the usurious terms dictated by the lender” (Donatelli v Siskind, 170 AD2d 433, 434 [2d Dept 1991] [citations omitted]).
“Further, there can be no usury unless the principal sum advanced is repayable absolutely” (Transmedia Rest. Co. v 33 E. 61st St. Rest. Corp., 184 Misc 2d 706, 711 [Sup Ct, NY County 2000]). The question is whether a particular transaction under scrutiny was “made in good faith and not as a cover for a loan” (72 NY Jur 2d, Interest and Usury § 85), and what effect to give to Neely’s guaranty, since the giving of a guaranty is one of the factors “to be considered in determining whether the transaction is in fact a loan or purchase and sale” (id.).
“There can be no usury unless the principal sum advanced is repayable absolutely. If it is payable upon some contingency that may not happen, and that really exposes the lender to a hazard of losing the sum advanced, then the reservation of more than legal interest will not render the transaction usurious, in the absence of a showing that the risk assumed was so unsubstantial as to bear no reasonable relation to the amount charged.
“This risk of loss is to be distinguished from the risk of nonpayment that is inherent in every loan and that may only be compensated for by statutory interest; the risk of loss by the death or insolvency of the borrower is the ordinary risk that every person runs who lends money on personal security only” (72 NY Jur 2d, Interest and Usury § 87).
Here, the witness claimed that the total amount owed does not depend on an exorbitant interest rate, but rather, is based on a purchase of account receivables agreement. According to his testimony:
“We generally do not use the term loan ever . . . we call it an advance because in essence according to the language of the contract, what we’re doing is we’re purchasing a portion of your future receivables that don’t exist, which means we are becoming a partner in your business, and when our interest in your business is satisfied, which would be that payback amount, we exit, we’re no longer your partner, you go out on your own, you continue on, *475 our interest that we’ve invested in has been satisfied to that amount and we move along ... if you look at the language we’re not allowed to write anywhere a loan. It’s illegal. So we don’t have it written anywhere loan, when we speak to a customer, I mean sometimes there’s a rep there that slips up and will say loan, but they are correct, these are not called loans” (tr at 23-24).
However, upon further questioning by the court, it became clear that there was no evidence to support his purchase of receivables argument, or that the parties’ arrangement contemplated that plaintiff was an investor or partner in defendants’ business. While the witness spoke generally of instances, such as a flooded warehouse, under which plaintiff might not be able to collect repayment with interest from a customer, he was unable, when pressed by the court to point to a nonrecourse provision in the Merchant Agreement by which plaintiff assumed the risk that it might not be able to collect payments from the instant defendants’ account receivables. Merely telling the court that risk is contemplated under the terms of the agreement is inadequate, especially where, as here, the agreement provided for court review is illegible, with excessively small print. The court is further troubled by the witness’s testimony to the effect that plaintiff is able to escape an element of risk by deeming a borrower’s failure to pay to be wilful or otherwise unjustified, and entitling it to seek payment in full under the personal guaranty provided by RDN’s owner, Robby Neely. This required guaranty, along with the other facts and circumstances set forth clearly demonstrate that the principal sum advanced was absolutely repayable with calculated interest that exceeds the legal rate (72 NY Jur 2d, Interest and Usury § 85), and supports a finding that the evidence outweighs the presumption against a finding of usury (Freitas v Geddes Sav. & Loan Assn., 63 NY2d 254, 261 [1984]).
The court comes to the inevitable conclusion that the real purpose of the agreement was for plaintiff to lend money to defendants at the usurious interest rate set forth therein, and that defendant agreed to borrow the money based on the same usurious terms dictated by plaintiff. Denominating a loan document by another name, as in this case, by calling it a “Merchant Agreement,” does not shield it from the judicial determination that it contemplates a criminally usurious transaction. Accordingly, as the party seeking to exact criminally usurious interest, plaintiff is also “not entitled to equitable relief” (Blue Wolf *476 Capital Fund II, L.P. v American Stevedoring, Inc., 105 AD3d at 184), thus negating any claim for unjust enrichment.
For the reasons set forth above, it is the court’s decision and order that plaintiff is not entitled to recover principal or interest, nor is it entitled to recover any of the other fees or costs requested, or arising out of, this matter.

. According to the testimony adduced at the inquest, plaintiff had the option of collecting either the fixed amount of $198 per day, or 15% of defendant’s deposits.

. Despite the affiant’s phraseology, the $13,050 actually represents the amount plaintiff expected to receive in return for the $9,000 advanced to RDN.