FILED

SEP 27 2024

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>ENPARK LANDSCAPE, LLC,<br><div align="right">Debtor.</div> | BAP No. NV-23-1182-PLC |
| | Bk. No. 23-11145-abl |
| ENPARK LANDSCAPE, LLC,<br><div align="right">Appellant,</div><br>v.<br>AKF, INC. dba FundKite,<br><div align="right">Appellee.</div> | **MEMORANDUM**<sup>*</sup> |

Appeal from the United States Bankruptcy Court
for the District of Nevada
August B. Landis, Chief Bankruptcy Judge, Presiding

Before: PEARSON[1], LAFFERTY, and CORBIT, Bankruptcy Judges.

Concurrence by Judge Pearson

## INTRODUCTION

Debtor Enpark Landscape, LLC ("Enpark") appeals the bankruptcy court's order allowing the secured claim filed by creditor AKF, Inc., dba FundKite.

---

<sup>*</sup> This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

[1] Hon. Teresa H. Pearson, United States Bankruptcy Judge for the District of Oregon, sitting by designation.

1

FundKite timely filed a proof of claim in Enpark's chapter 11[2] bankruptcy case and supported its claim with two documents: (i) a Revenue Purchase Agreement executed by FundKite as the purported purchaser of some of Enpark's accounts; and (ii) a Settlement Agreement entered into by the parties shortly before Enpark's bankruptcy filing that purported to resolve disputes between them arising from Enpark's default under the Revenue Purchase Agreement.

Enpark objected to FundKite's claim, focusing primarily on whether the Revenue Purchase Agreement was enforceable. Specifically, Enpark argued that, rather than an agreement to purchase some of Enpark's accounts receivable, the Revenue Purchase Agreement was, under applicable non-bankruptcy law, actually a disguised loan, and a criminally usurious one at that. In making this argument, Enpark highlighted the plethora of cases in New York and elsewhere that have concluded that agreements like the Revenue Purchase Agreement are, in fact, loans, and subject to attack under the state's usury laws.

The bankruptcy court overruled the objection based upon the longstanding and generally applicable doctrine that courts should honor settlement agreements, and accord them finality. Although the court indicated that its cursory examination of the Revenue Purchase Agreement

[2] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, "Rule" references are to the Federal Rules of Bankruptcy Procedure, and "Civil Rule" references are to the Federal Rules of Civil Procedure.

gave it concerns about the enforceability of the agreement, the court ultimately decided that it was required to focus solely on the Settlement Agreement and honor the parties' putative intent to resolve their disputes per that agreement.

In so ruling, the bankruptcy court made two critical determinations that the Panel believes were erroneous. First, although the FundKite claim as filed was supported by the Revenue Purchase Agreement as well as the Settlement Agreement, the bankruptcy court at least nominally chose to rely solely on the Settlement Agreement and determined that the Settlement Agreement provided sufficient factual support for the filed claim. We believe that this determination was in error. In this instance, the Settlement Agreement simply did not provide enough information about FundKite's right to payment to permit the bankruptcy court to allow FundKite's secured claim relying on the Settlement Agreement alone.

Second, if an objection is made to a claim, the Bankruptcy Code requires the court to determine whether the claim is "unenforceable . . . against the debtor . . . under any . . . applicable law." § 502(b)(1). In relying solely on the Settlement Agreement, the bankruptcy court declined to address issues raised by Enpark regarding the enforceability of FundKite's claim. Although Enpark's objection did not cite relevant applicable **non-bankruptcy law** – New York law – regarding the enforceability of the **Settlement Agreement**, in light of our decision to remand this matter to the bankruptcy court based on the court's erroneous

determination that the Settlement Agreement itself provided sufficient support for the claim, we believe that the court must also consider and address arguments regarding the enforceability of FundKite's claim.

Therefore, we VACATE the bankruptcy court's ruling and REMAND this matter for further proceedings consistent with this decision.

## FACTS[3]

In December 2022, Enpark entered into a Revenue Purchase Agreement with FundKite, in which FundKite purchased $344,448 of Enpark's future receipts for $249,600. To satisfy its obligation to FundKite, Enpark was required to pay 13% of its receipts to FundKite each week until it had paid FundKite the $344,448 plus any outstanding fees. FundKite also took a security interest in Enpark's accounts to secure Enpark's obligations.

Enpark concedes that it defaulted on the Revenue Purchase Agreement. FundKite then sought enforcement in arbitration and also sought the aid of a New York state court to restrain Enpark's use of its receivables pending arbitration.

Before the hearing on the order to show cause in the state court action, Enpark and FundKite entered into the Settlement Agreement, with an effective date of March 6, 2023. A stipulation of settlement was filed with, but not approved by, the New York state court. The Settlement

---

[3] We have taken judicial notice of the bankruptcy court docket and various documents filed through the electronic docketing system. *See O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.)*, 887 F.2d 955, 957-58 (9th Cir. 1989); *Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

Agreement required Enpark to make certain payments to FundKite, in an amount and on a schedule modified from the Revenue Purchase Agreement.

After complying with the initial obligations of the Settlement Agreement, Enpark soon thereafter defaulted. Enpark filed its chapter 11 bankruptcy case on March 27, 2023.

FundKite filed a proof of secured claim. FundKite's proof of claim was properly executed, and included Official Form 410, a copy of a UCC-1 financing statement that listed Enpark as debtor, a copy of the Settlement Agreement, and a copy of the Revenue Purchase Agreement. Enpark objected to the proof of claim.

The bankruptcy court, relying upon the written records in the case, and considering the arguments of counsel, orally ruled to allow FundKite's claim. The bankruptcy court held that FundKite's proof of claim complied with the requirements of the Bankruptcy Code and Rules, and that the claim was prima facie valid. The bankruptcy court also acknowledged that if the underlying Revenue Purchase Agreement were the basis of the claim, Enpark's objection contained "probative force equal to that of the allegations of the proof of claim." However, the bankruptcy court held that the proof of claim was based on the Settlement Agreement. The bankruptcy court opined that settlement agreements are favored by the law and concluded that it would not look behind the terms of the Settlement Agreement. The bankruptcy court, in its oral ruling, said that "[t]he Court

is looking at the settlement agreement as the basis for the proof of claim and whether or not the settlement agreement can provide support under New York law for the proof of claim itself, and I find that it can." In so concluding, the bankruptcy court necessarily found that the Settlement Agreement contained sufficient information and support to demonstrate that FundKite had an allowable secured claim before considering whether, for other reasons, the claim would be enforceable under applicable law.

Enpark asserts that the bankruptcy judge made an alternative ruling that the underlying Revenue Purchase Agreement was enforceable, and criticizes the bankruptcy court for failing to provide any analysis. FundKite insists that the bankruptcy court made no such alternative ruling and relied solely on the Settlement Agreement. While not entirely clear, the bankruptcy court stated that it was relying on the Settlement Agreement alone in reaching its decision, and the court did not appear to refer to any provisions of the Revenue Purchase Agreement in overruling the objection. Accordingly, the bankruptcy court did not appear to decide whether the underlying Revenue Purchase Agreement was actually a loan, and if it were a loan, if it were criminally usurious, and if so, what impact that would have on the enforceability of the Settlement Agreement.

On November 1, 2023, the bankruptcy court entered its written Order Overruling Objection to Claim. Later that day, Enpark appealed.

## JURISDICTION

The bankruptcy court had jurisdiction over this case pursuant to 28 U.S.C. §§ 1334(a) and 157(a), and Rule 1001(b)(1) of the Local Rules of Bankruptcy Practice of the United States Bankruptcy Court, District of Nevada.[4] This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(B). We have jurisdiction over the bankruptcy court's determination under 28 U.S.C. § 158(a)(1).

## ISSUES

Did the bankruptcy court err in relying exclusively on the Settlement Agreement to overrule Enpark's objection to FundKite's claim, including determining the Settlement Agreement alone adequately supported FundKite's proof of claim?

Did the bankruptcy court err in failing to analyze the enforceability of FundKite's claim under applicable nonbankruptcy law?

## STANDARD OF REVIEW

In the context of a claim objection, we review the bankruptcy court's legal conclusions de novo and its findings of fact for clear error. *Lundell v. Anchor Constr. Specialists, Inc.*, 223 F.3d 1035, 1039 (9th Cir. 2000). The bankruptcy court's ruling purely on the sufficiency of the proof of claim, including its finding that the Settlement Agreement contained sufficient information to support the proof of claim, is reviewed for clear error.

---

[4] Nevada's Local Rule 1001(b)(1) automatically refers all bankruptcy cases in the District of Nevada to the bankruptcy court.

The bankruptcy court's legal conclusions – such as its holding that it could not consider any documents other than the Settlement Agreement and its interpretation of New York law regarding the enforceability of settlement agreements – are questions of law that we review de novo. *See Renwick v. Bennett (In re Bennett)*, 298 F.3d 1059, 1064 (9th Cir. 2002) (applying state law); *MPEG LA, LLC v. Samsung Elecs. Co.*, 166 A.D.3d 13, 17, 86 N.Y.S.3d 4, 8 (App. Div. 2018) (similar rule in New York). When we conduct a de novo review, "we look at the matter anew, the same as if it had not been heard before, and as if no decision previously had been rendered, giving no deference to the bankruptcy court's determinations." *Charlie Y., Inc. v. Carey (In re Carey)*, 446 B.R. 384, 389 (9th Cir. BAP 2011).

## DISCUSSION

A proof of claim is deemed allowed unless a party in interest objects to the claim. § 502(a). When an objection to claim is filed, the objecting party must "produce evidence and show facts tending to defeat the claim by probative force equal to that of the allegations" of the proof of claim. *Wright v. Holm (In re Holm)*, 931 F.2d 620, 623 (9th Cir. 1991) (citation omitted). If the objecting party produces such facts, the burden of proof shifts to the claimant to "prove the validity of the claim by a preponderance of the evidence." *Lundell*, 223 F.3d at 1039 (citation omitted). The claimant has the ultimate burden of persuasion. *Id.*

The court must then determine the amount of the claim and (with exceptions not relevant here) "allow such claim in such amount, except to

8

the extent that. . . such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." § 502(b)(1). Any dispute over a claim in bankruptcy based on contract law is governed by relevant state law unless the Bankruptcy Code specifically states otherwise. *Merced Prod. Credit Assoc. v. Sparkman (In re Sparkman)*, 703 F.2d 1097, 1099 (9th Cir. 1983).[5]

Enpark objected to FundKite's claim, primarily challenging the enforceability of the Revenue Purchase Agreement under New York law. Notwithstanding this objection, the bankruptcy court made two findings it believed militated against disallowance of FundKite's claim.

First, the court found that FundKite's claim was based entirely on the Settlement Agreement, and that the Settlement Agreement sufficiently established FundKite's right to payment. As set forth below, we disagree and we question the effectiveness of the Settlement Agreement in light of its language concerning the effect of filing for bankruptcy.

---

[5] The Rules require claimants filing a proof of claim to, among other things, provide a copy of the writing on which the claim is based as well as evidence of perfection of any security interest the claimant asserts. Rule 3001(c)(1), (d). A proof of claim filed in accordance with the Rules constitutes prima facie evidence of the validity and amount of the claim. Rule 3001(f). Here, the bankruptcy court correctly held, and the parties do not dispute, that FundKite initially satisfied Rule 3001 by furnishing documentation adequate to serve as prima facie evidence of the validity and amount of the claim, i.e., the Revenue Purchase Agreement and the Settlement Agreement.

Second, the bankruptcy court concluded that it would not adjudicate Enpark's arguments regarding the validity of the Revenue Purchase Agreement because settlement agreements are generally favored and enforceable under New York state law. The bankruptcy court interpreted this law as prohibiting any evaluation of the underlying facts leading to entry of the Settlement Agreement.

While we acknowledge the importance of honoring settlement agreements as a matter of sound judicial policy, we do not believe that any such policy prohibits looking behind such agreements to determine the true nature of a debt in the claims allowance process. Absent a bankruptcy-based restriction on looking behind settlement agreements in claims allowance, which we believe case law does not support, we believe that on remand the parties may raise, and the bankruptcy court may consider, arguments based on applicable non-bankruptcy law regarding the appropriate tests for when a court should look beyond a settlement agreement to determine the enforceability of the underlying transaction.

## A. The bankruptcy court's finding that the Settlement Agreement alone established FundKite's secured claim was clear error.

In its ruling, the bankruptcy court agreed with FundKite that the proof of claim was based solely on the Settlement Agreement. However, the Settlement Agreement, standing alone, could not have supported FundKite's claim.

First, and most conspicuously, although FundKite asserted that its claim was secured, and the bankruptcy court agreed and allowed the claim as secured, nothing in the Settlement Agreement so much as referred to a basis for the assertion of a secured claim, let alone contained or referred to evidence of a grant of security in favor of FundKite, or the perfection of any such interest. The only grant of a security interest from Enpark to FundKite in the record is in the Revenue Purchase Agreement. In fact, FundKite itself attached the Revenue Purchase Agreement to the official claim form, presumably for the purpose of establishing that its claim was secured.

Moreover, it is questionable whether the Settlement Agreement even governs this claim. The Settlement Agreement provides the following:

> 9. Bankruptcy action. In the event that a petition for bankruptcy relief, whether voluntary or involuntary, is filed by or relating to any Defendant [Enpark] prior to the expiration of ninety-one (91) days after Plaintiff [FundKite] receives the final Settlement Payment, **this Agreement shall be of no effect as to such Defendant filing Bankruptcy**, and Plaintiff shall be entitled to assert a claim in such bankruptcy proceeding. . . .

(Emphasis added).

Read most plainly, paragraph 9 of the Settlement Agreement indicates that the Settlement Agreement will not be enforceable between FundKite and Enpark if Enpark files bankruptcy. We note that the relevant language does **not** provide that "at the option of the creditor" (here, FundKite) the Settlement Agreement may be unenforceable should Enpark file for bankruptcy. Nor does it provide that should Enpark file for

11

bankruptcy, FundKite is not bound by any financial accommodations made in the Settlement Agreement pertaining to the amount of the debt or timing of payment. Rather, it appears the parties may have bargained for a more absolute result, i.e., for the outcome that the Revenue Purchase Agreement, **not the Settlement Agreement**, would be the controlling agreement if Enpark filed bankruptcy.

At oral argument, the Panel inquired of counsel for the parties whether the issue of the applicability or effect of paragraph 9 of the Settlement Agreement had been argued to the bankruptcy court; counsel indicated that it had not. And it appears from the bankruptcy court's oral ruling that the court neither mentioned nor evaluated the effect of this provision.[6] On remand, the bankruptcy court should consider these issues.

As provided in greater detail in section B, the bankruptcy court concluded that the mere existence of the Settlement Agreement meant that the court was prohibited from assessing other documents submitted in support of FundKite's claim. However, while the court may ultimately decide that the Settlement Agreement remains binding and enforceable, nothing prevented the bankruptcy court from looking behind the Settlement Agreement to decide the nature of FundKite's claim. In light of

---

[6] If the Settlement Agreement were an executory contract, this type of provision would be an unenforceable ipso facto clause under 11 U.S.C. § 365(e)(1). However, settlement agreements are not always executory contracts. *See Svenhard's Swedish Bakery v. U.S. Bakery (In re Svenhard's Swedish Bakery)*, 653 B.R. 471, 477 (9th Cir. BAP 2023). The effect of paragraph 9 is a matter the bankruptcy court should consider on remand.

the above, the bankruptcy court's finding that the Settlement Agreement

formed the sole basis of FundKite's claim was clear error.[7]

## B. The Settlement Agreement did not present a bar to the bankruptcy court analyzing the enforceability of the Settlement Agreement and the Revenue Purchase Agreement under New York law.

As discussed above, we believe that the bankruptcy court erred in

finding that the Settlement Agreement alone formed the basis of

FundKite's claim. However, the bankruptcy court also did not fully

consider applicable New York law regarding the enforceability of the

Settlement Agreement.

As a preliminary matter, we acknowledge that Enpark's legal

theories regarding invalidation of the Settlement Agreement left much to

be desired. Although Enpark referenced New York law to advance its

---

[7] The Panel further notes that the Settlement Agreement also contained fairly broad mutual releases of claims that FundKite asserts resolve any claim against it pertaining to the Revenue Purchase Agreement. The bankruptcy court referred to these releases at the conclusion of its oral ruling as further support for the proposition that the Settlement Agreement, and the Settlement Agreement alone, governed the parties' legal relations, and fully supported FundKite's claim.

However, the Panel also notes the broad and unqualified language of paragraph 9 of the Settlement Agreement, which, read plainly, indicates that if a debtor party filed bankruptcy, the Settlement Agreement would not be effective and the parties would essentially go back to square one. This outcome would presumably not include the option for either party to retain the benefit of the releases—but the parties can argue that point on remand.

Further, as referred to in section B of this Memorandum Decision, should the bankruptcy court on remand determine that, in light of the nature of the underlying transaction that gave rise to the Settlement Agreement, that agreement would not be enforceable under New York law, there would be no reason to enforce a release contained in such an unenforceable agreement.

theories regarding invalidation of the **Revenue Purchase Agreement**, Enpark relied exclusively on federal law in support of its arguments regarding the validity of the **Settlement Agreement**. We agree with the bankruptcy court that Enpark mistakenly relied on *Archer v. Warner* in support of its position that the Settlement Agreement is not enforceable. 538 U.S. 314 (2003).[8] *Archer* provided that the existence of a prepetition settlement agreement may not shield from the bankruptcy court's inquiry the nature of a prepetition debt, i.e., whether a debt should be excepted from discharge under § 523(a), a holding not relevant to this case.

Nevertheless, *Archer* does stand for the proposition that bankruptcy courts may look beyond a settlement agreement to determine the nature of a claim; more simply, *Archer* provides that there is no overall bankruptcy law prohibition on looking past a settlement agreement in performing a central purpose of the bankruptcy laws, including the allowance of claims. *Id.* at 323.

As expressly declared by the language of § 502(b)(1), in the claims allowance process, the enforceability of a claim must be assessed under "any . . . applicable law"—here, New York law. Enpark expressly and

---

[8] The parties also cite and discuss cases holding that agreements waiving the benefits and protections of the Bankruptcy Code are void. *Continental Ins. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.)*, 671 F.3d 1011 (9th Cir. 2012); *Bank of China v. Huang (In re Huang)*, 275 F.3d 1173 (9th Cir. 2002); *Hayhoe v. Cole (In re Cole)*, 226 B.R. 647 (9th Cir. BAP 1998); *In re Pease*, 195 B.R. 431 (Bankr. D. Neb. 1996). The bankruptcy court correctly held these cases were irrelevant.

vigorously challenged the validity and enforceability of both the Revenue Purchase Agreement and the Settlement Agreement by asserting that the Revenue Purchase Agreement was a disguised loan with a criminally usurious interest rate and, therefore, void. This challenge to FundKite's claim presented a serious issue regarding the enforceability of the Revenue Purchase Agreement under New York law. Enpark's misplaced reference to federal law notwithstanding, a review of New York law pursuant to § 502(b)(1) would have revealed state law support for Enpark's theory. Under *Archer* and § 502(b)(1), nothing prohibited the bankruptcy court from considering such authorities.

To be sure, the bankruptcy court did reference New York law for the basic proposition that settlement agreements are favored by New York courts and are not lightly cast aside. *See Stein v. Stein*, 12 N.Y.S.3d 284, 286 (NY App. Ct. 2015).[9] However, this general policy does not translate to a *per se* rule that settlement agreements are **never** invalidated under New York law, nor does it necessarily prevent the bankruptcy court from considering all of the documents and information in support of FundKite's claim prior to adjudicating the enforceability of that claim.

---

[9] There is no dispute in this case that the Settlement Agreement meets the basic legal requirements in New York for a settlement to be an effective contract: it is in writing, signed by both parties, and includes material terms and a manifestation of mutual intent. N.Y. Civil Practice Laws and Rules, § 2104 (McKinney 2024); *Forcelli v. Gelco Corp.*, 972 N.Y.S. 2d 570, 573 (App. Div. 2013).

Because Enpark argued that the Revenue Purchase Agreement is void as criminally usurious, on remand, nothing prohibits the bankruptcy court from assessing Enpark's arguments using this state law framework. The record before the Panel indicates that Enpark's arguments raised at least three issues the bankruptcy court could have considered under applicable New York law: (i) whether the Revenue Purchase Agreement was a disguised loan; (ii) if the Revenue Purchase Agreement was a disguised loan, whether it contained a criminally usurious interest rate which rendered the entire agreement void;[10] and (iii) whether Enpark's arguments regarding the Revenue Purchase Agreement provided a basis for invalidation of the Settlement Agreement under **New York law**.

It is not this Panel's function to take any position regarding these questions, other than to conclude that the bankruptcy court's determination that it was restricted from considering them was erroneous. On remand, these issues are ripe for adjudication.

The concurrence believes that this decision does not go far enough in analyzing the question of the proper treatment of the Settlement Agreement on remand, and that the Panel may be faulted for having disposed of an issue that might be deemed to have been harmless error by the trial court. Respectfully, we take a different view.

---

[10] Enpark provided ample law regarding these first two questions in its briefing before the bankruptcy court, including a decision involving a very similar contract that FundKite had with another borrower. *AKF, INC. d/b/a FundKite v. Western Foot & Ankle Center*, 632 F.Supp.3d 66 (E.D.N.Y. 2022).

First, we question the applicability of the harmless error doctrine to our disposition of this matter. The harmless error doctrine describes a means by which a reviewing court determines **not** to disturb a ruling by the trial court based on the immateriality of the trial court's putative error. And our decision **not** to invoke that doctrine here is hardly a matter for which this Panel may appropriately be critiqued, especially where the Panel has also determined that the trial court made a clearly erroneous finding of fact that compels remand in any event.

More fundamentally, with respect to the legal issue on which the concurrence is concerned, we do not believe that the trial court's erroneous determination that it was **prohibited even from considering** whether there was a basis in applicable non-bankruptcy law to question the enforceability of FundKite's claim, a determination that runs directly contra the express directive of § 502(b)(1), could ever be "harmless." Assessing the availability and applicability of legal arguments concerning the enforceability of the Settlement Agreement presents a different question, and one that has not yet even been addressed.

For this reason, we do not agree that the decision leaves a necessary aspect of this issue unresolved. In our view, the issue of whether the trial court may look past the Settlement Agreement is "gating," in the sense that, as the trial court determined, there is a well-acknowledged doctrine that when parties settle a dispute, a court should normally give effect to their arrangement, and accord that arrangement the finality to which the

17

parties agreed. *See Stein*, *supra*, 130 A.D.3d at 605. And that gating issue should be raised, argued, and disposed of by the trial court consistent with the dictates of § 502(b)(1) and applicable non-bankruptcy law.

Thus, while we acknowledge that the cases referenced in the concurrence provide one potential basis for the bankruptcy court to examine the enforceability of the Settlement Agreement, any such determination is for the trial court to decide after the parties have had an opportunity to raise the issue, cite relevant authority, and fully argue the matter to that court. It is not for this court to decide that issue prior to the presentation of arguments to the trial court, to define the parameters of such presentation, or to indicate which cases would be most relevant to the trial court's determinations.

We acknowledge, and applaud, the statement at the conclusion of the concurrence that it does not purport to decide the issue of whether the trial court **should** look past the Settlement Agreement. But we are concerned that that statement is difficult to square with the approach adopted in the concurrence. The concurrence expends several pages citing and providing detailed analysis of the holdings and import of numerous cases under New York law on one side of this subject; it would be difficult for a reader not to conclude that the concurrence is essentially opining not only on the proper scope of the inquiry, but also necessarily, on the "right" answer to the underlying question, and dictating that answer to the trial court. For the reasons previously stated, we believe that that exercise is inconsistent with

18

the proper role of this appellate Panel, and is an activity in which this court should not engage.

## CONCLUSION

For the reasons set forth above, we VACATE the bankruptcy court's ruling and REMAND this matter for further proceedings consistent with this decision.

Concurrence begins on next page.

PEARSON, Bankruptcy Judge, concurring:

I generally concur with the disposition of this matter and the preceding opinion. I write separately because I believe the analysis needs to go further.

The majority asserts that it is sufficient to vacate based on our decision regarding a "gating" issue, without any examination of whether that "gating" issue could potentially make a difference to the outcome of the case. Based on the harmless error doctrine, I do not agree. If there are no non-frivolous arguments that would make Enpark's position tenable, Enpark would not be harmed by the trial court's failure to consider its arguments. This court does not act on errors unless those errors impact the rights of the parties. *Van Zandt v. Mbunda (In re Mbunda)*, 484 B.R. 344, 355 (9th Cir. BAP 2012) ("Generally speaking, we ignore harmless error"); *Litton Loan Servicing, LP v. Garvida (In re Garvida)*, 347 B.R. 697, 704 (9th Cir. BAP 2006) (refusing to reverse "for reasons that do not affect the substantial rights of parties") (citing, *inter alia*, 28 U.S.C. § 2111). Before vacating the bankruptcy court's decision, we must determine whether the bankruptcy court's decision to consider only the Settlement Agreement and general law favoring settlement agreements, and not Enpark's argument that that the Revenue Purchase Agreement is criminally usurious,[11] may have impacted Enpark's rights.

---

[11] Enpark argued that contracts to purchase future receivables are loans subject to usury laws and unenforceable, citing *Funding Metrics, LLC v. NRO Edgartown, LLC*, 2019

Under New York law, the enforceability of a settlement agreement can be impacted by the nature of the underlying agreement. In *Denburg v. Parker Chapin Flattau & Klimpl*, 624 N.E.2d 995 (1993), the New York Court of Appeals (New York's highest court) considered whether a settlement agreement was unenforceable when the initial agreement underlying the dispute was itself unenforceable as against public policy. *Denburg* involved a dispute between a law firm and one of its former partners. The firm's partnership agreement provided that a withdrawing partner would receive certain payments, but only if he did not work for the firm's clients over the next two years after withdrawing. The Court of Appeals held that this anticompetitive term of the partnership agreement violated New York public policy and was unenforceable. *Id.* at 1000. This did not end the Court of Appeals' inquiry, however, because the firm and the former partner had

WL 4376780, 2019 N.Y. Slip. Op. 32651 (N.Y. Sup. Ct. Aug. 28, 2019); *GMI Grp., Inc. v. Unique Funding Sols., LLC*, 606 B.R. 467, 489 (Bankr. N.D. Ga. 2019) (applying New York law); *QFC, LLC v. Iron Centurian, LLC*, 2017 WL 2989222, 2017 N.Y. Slip. Op. 31438 (N.Y. Sup. Ct. July 5, 2017), *rev'd*, 179 A.D.3d 1110 (2020); *Merch. Funding Servs., LLC v. Volunteer Pharmacy, Inc.*, 55 Misc. 3d 316 (N.Y. Sup. Ct. 2016), *rev'd*, 179 A.D.3d 1051 (2020); *Pearl Capital Rivis Ventures, LLC v. RDN Constr., Inc.*, 54 Misc. 3d 470, (N.Y. Sup. Ct. 2016); *see also Funding Metrics, LLC v. D&V Hosp., Inc.*, 62 Misc. 3d 966 (N.Y. Sup. Ct. 2019), *rev'd*, 197 A.D.3d 1150 (2021). Enpark set forth the elements of criminal usury under New York law, and explained why, under the facts of this case, Enpark believed the Revenue Purchase Agreement was criminally usurious. Enpark also pointed out that, under New York law, criminally usurious loans are void and unenforceable, citing *AKF, Inc. v. Western Foot & Ankle Center*, 632 F.Supp.3d 66, 83 (E.D.N.Y. 2022), *vacated* (June 14, 2024). The New York Court of Appeals has ruled that a criminally usurious contract is void ab initio and unenforceable. *Adar Bays, LLC v. GeneSYS ID, Inc.*, 179 N.E.3d 612, 614-21 (2021). FundKite disputes that the Revenue Purchase Agreement is criminally usurious, asserting it is not a loan and that Enpark released all its defenses.

also entered into a settlement agreement. The Court of Appeals also had to decide whether the settlement agreement—which arose from the dispute over the contract terms that violated public policy—was enforceable.

In making that decision, the Court of Appeals first noted the strong public policy favoring enforcement of settlement agreements. But that public policy was not dispositive. The Court of Appeals acknowledged the former partner's argument that, if a settlement agreement of a dispute over an illegal contract was enforceable, the parties could by private agreement waive the illegality and evade the prohibitions against the original contract. *Id.* at 1001. The Court of Appeals then stated the rule in New York as follows:  "While some bargains are so offensive to society that courts will not entertain the action—essentially leaving the parties where they are (*see, e.g., McConnell v Commonwealth Pictures Corp.*, 7 NY2d 465, 467 [involving commercial bribery]; *Flegenheimer v Brogan*, 284 NY 268, 272-273 [involving fraud])—in other cases an illegal agreement is not so repugnant and may be enforced (*see, Lloyd Capital Corp. v Pat Henchar, Inc.*, 80 NY2d 124, 127-128 [involving a federal regulatory violation that did not make a contract unenforceable under federal law]). It is all a matter of degree." *Id*.

The Court of Appeals noted that the provision in the law firm's partnership agreement was not per se illegal, but its enforceability was dependent upon facts and circumstances, and thus unlike situations involving commercial bribery or fraud. Therefore, the Court of Appeals

concluded that the settlement agreement resolving the dispute over the anticompetitive terms of the partnership agreement could be enforced.

In addition to the rule in *Denburg*, there is a long history of cases where New York courts have refused to enforce settlement agreements that either include terms that are void in violation of New York law, or that perpetuate the enforcement of an underlying illegal contract. In *Drucker v. Mauro*, 30 A.D.3d 37(App. Div. 2006), a landlord and a tenant entered into a lease that incorporated a settlement over disputed items. The settlement terms in the lease were not consistent with New York's Rent Stabilization Law. Lease provisions violating that law are void, not merely voidable. The court refused to enforce the settlement.

In *Baksi v. Wallman*, 271 A.D. 422(App. Div. 1946), *aff'd*, 74 N.E.2d 172 (1947), a professional boxer entered into a management agreement with two of his managers. The management agreement was illegal and unenforceable because it violated New York's boxing laws. The two managers had stipulated to a settlement between themselves. The New York courts held that the stipulation of settlement could not be enforced without enforcing the illegal underlying contract, and that therefore, the settlement also was unenforceable. *Id.* at 426.

There is also a line of authority in New York that any new agreement that is made for the purpose of carrying out any of the unexecuted provisions of a previously illegal contract is tainted by the same illegality and void. *Boyd v. Boyd*, 130 A.D. 161 (App. Div. 1909); *Coffey v. Burke*, 132

23

A.D. 128 (App. Div. 1909); *Gray v. Hook*, 4 N.Y. 449, 459-60 (1851) ("When the contract grows immediately out of and is connected with an illegal or immoral act, a court of justice will not lend its aid to enforce it; and if the contract be in *part only* connected with the illegal transaction, and grows immediately out of it, though it be in fact a new contract, it is equally tainted by the illegality of the transaction from which it sprung.") (emphasis in original).

If Enpark is correct that the Revenue Purchase Agreement is criminally usurious, then, depending on how this New York law is applied to the context of a criminally usurious agreement, it is possible that the Settlement Agreement may also be unenforceable under New York law.

Enpark's substantial rights were impacted when the bankruptcy court did not consider Enpark's arguments that Revenue Purchase Agreement was criminally usurious. We must vacate so the bankruptcy court can consider those arguments.

To be clear, a determination that Enpark's rights were affected because the bankruptcy court did not consider its arguments is not the same thing as a determination that Enpark's arguments are correct. The discussion of the case law above is not intended to dictate a "right" answer, but instead to show that there is a non-frivolous basis why Enpark's arguments about the allegedly-criminally usurious nature of the Revenue Purchase Agreement could matter to evaluation of the Settlement Agreement and the outcome of this case. This court need not decide, and is

24

not deciding, whether the Revenue Purchase Agreement is criminally usurious or whether the Settlement Agreement is enforceable under New York law. On remand, Enpark is entitled to make its arguments, and FundKite is entitled to refute those arguments. We leave the ultimate merits for the bankruptcy court to determine.